[Civ. No. 27940.   Second Dist., Div. Two.   Sept. 14, 1964.]

JACK R. BATES, Plaintiff and Respondent, v. FREDERICK G. STOEHR, Defendant and Appellant.

Frederick G. Stoehr, in pro. per., for Defendant and Appellant.

Little, Curry & Hagen, F. Edward Little and Stanley Rogers for Plaintiff and Respondent.

ROTH, J.—Respondent Bates (Bates) recovered a money judgment for approximately $7,900 and attorney's fees against appellant Stoehr (Stoehr) predicated upon a written contract wherein Bates as seller sold his manufacturing business to one Aghajanian as purchaser (Purchaser). The contract was negotiated by Stoehr as attorney for Purchaser and the promissory notes representing installment payments under the contract and the contract were guaranteed by Stoehr concurrently with the execution of the contract and the installment notes. There was no judgment against Purchaser since he was adjudicated a bankrupt before the trial had proceeded to judgment.

The relevant portions of the contract provided that Purchaser would receive all work in progress; accounts receivable; all bills of lading for goods shipped; a list of all orders taken and orders filled; and an exclusive license to manufacture ornamental fountains under a pending patent application. Bates also agreed that he would pay salesmen's commissions for sales made prior to March 30, 1960, out of the first payment made by Purchaser, and that he would not engage in competition with Purchaser.

It was provided in the agreement that the amounts stated therein were subject to correction and that any adjustment would be made in the second and third notes.

In reply to the complaint, Purchaser and Stoehr filed separate answers and cross-complaints. In each answer, there were alleged, in addition to other defenses, general representations amounting to fraud. Purchaser, in his cross-complaint, in addition to other claims comprising offsets and defenses to the contract, alleges six specific representations of material fact and ends up with the allegation: "The foregoing representations were false and fraudulent, and the promises and agreement were made by cross-defendant without any intention of performing them. . . ."

Purchaser then proceeds to allege specifically the facts showing the untruth of some of the representations and the

failure to perform others and/or the nonintention of Bates from the beginning to perform.

Stoehr, in his cross-complaint, in addition to other claims comprising offsets and defenses to the contract, alleges three specific material representations and concludes with the allegation: "Said representations were false and said promises were fraudulently made, without any intention of keeping and performing them, and were made for the purpose of inducing this cross-complainant to guarantee payment of said promissory note. . . ."

Stoehr then proceeds to specifically allege the manner in which the promises were false and fraudulent and facts in respect of the intent of seller from the beginning not to keep or perform certain of the promises.

In a pretrial conference an order was made, which among other things, recited: "The parties have signed a 'Joint Pre-Trial Statement' which is attached hereto and made a part of this order. The contentions of the parties and the issues are set forth therein, with the exception of the contentions of the defendants and cross-complainants. The contentions of the defendants and cross-complainants are set forth in separate documents entitled 'Pre-Trial Statement of Defendant and Cross-Complainant Harry Aghajanian' and 'Pre-Trial Statement of Defendant and Cross-Complainant Frederick G. Stoehr.' "

The joint pretrial statement referred to in and made a part of the pretrial order, among other things, recited all of the contentions of Bates as plaintiff and cross-defendant specifically, then listed under the heading of "Issues" items 1-10, both inclusive. Immediately following item 10 in the center of the joint pretrial statement is the legend

"CONTENTIONS OF DEFENDANTS AND CROSS-COMPLAINANTS."
(To be filed under separate cover.)

The joint pretrial statement then concludes with a description of "STATUS OF THE CASE."

█ It is apparent from the foregoing recital that all of the documents referred to were made a part of the pretrial *order*.

In the enumeration of the issues in the joint pretrial statement, items 6 and 9 are as follows:

"6. Whether or not the cross-complainant Stoehr's guarantee on the promissory note be rescinded because of the cross-defendant's fraudulent misrepresentations. . . . 9. The amount, if any, of the damages, including liquidated, consequential, etc., which the cross-complainant Aghajanian may recover

from the cross-defendant by reason of the cross-defendant's fraudulent misrepresentation.''

Under separate cover as specifically provided for by the joint pretrial statement, Purchaser lists specifically his defenses. Item 2 thereof is as follows:

''2. In his cross-complaint Aghajanian prays for the rescission of the agreement on the grounds of the fraudulent representations and conduct of Bates;''

Stoehr, in his pretrial statement, also under separate cover, as specifically provided in the ''Joint Pre-Trial Statement'' lists as his defenses, among others, the following:

''1. He received no consideration for his guarantee;

''2. He was induced to become guarantor by the false representations of plaintiff, alleged in Stoehr's cross-complaint;

''3. He rescinded his guarantee, and gave notice of rescission as soon as he discovered the false representations; that he gave written notice of rescission on June 6, 1960;''

It seems patently obvious from the above that fraud was the orbital issue in the litigation.

On many occasions during the trial, Stoehr attempted to introduce evidence of fraud, but on each occasion was completely barred from so doing by the trial judge. The trial judge asserted and reiterated that there was no issue of fraud presented.

A few excerpts from the record will illustrate what occurred: ''Where is the issue [of fraud] presented in the pleadings or in your pre-trial statements? . . . THE COURT: I find nothing in the statement of issues that embraces this inquiry and the objection is sustained. . . .''

Stoehr did not forthwith find items 6 and 9 listed on page 4 of the pretrial statement under the heading ''ISSUES.'' After a recess, the following took place:

''MR. STOEHR: I believe the point at which the Court recessed was whether the question of fraud and misrepresentation was within the issues as framed in the pre-trial statements.

''Since then I have examined the pre-trial order and the pre-trial statements and . . . if your Honor wishes I can read . . . those portions to which I have referred.

''THE COURT: Point them out to me, if you will.''

''. . . . . . . . . . . .

''THE COURT: Now, turn to page 3 of the pre-trial statement, the joint pre-trial statement and turn to issues. We are controlled by the issues, not by the contentions. Contentions

are merely what counsel think about an issue. Contentions are not admissible.''

At another point during the trial, the following took place:

"THE COURT: All right. To what issue is this addressed to?

"MR. STOEHR: That of fraud.

"THE COURT: Where is that fraud set out in the pre-trial statement?

"MR. ROGERS: Your Honor, if I may assist the Court, on page 4——

"THE COURT: No. Let counsel assist himself. He is entitled to indicate what he is trying to prove.

"MR. STOEHR: In the pre-trial statement of Frederic (*sic*) G. Stoehr: 'Stoehr's defenses are: 1. He received no consideration for his guarantee.'

"THE COURT: Where are you reading from?

"MR. STOEHR: From my pre-trial statement.

"THE COURT: I will ask you to point out to me which issue under the pre-trial statement covers the introduction of this evidence.

"MR. STOEHR: All right. 'Stoehr's defenses are: 1. He received no consideration for his guarantee.'

"THE COURT: Where will this be found?

"MR. STOEHR: That is on line 28 of page 1 of Stoehr's pre-trial statement.

"THE COURT: No. I call your attention to the issues that are set forth in the joint pre-trial statement and there only.''

Defense counsel had not as yet pointed out to the court the exact page of the joint pretrial statement which under the definition "ISSUES" made fraud an "issue" rather than a "contention." However, counsel did finally find, in ample time to have evidence of fraud received, the paragraphs 6 and 9 already referred to and the following took place:

"MR. STOEHR: First I wish to apologize to the Court for something which took place at Monday's session. Your Honor gave me the opportunity to point out in the joint pre-trial statement where the subject of fraud was indicated as an issue. I was taken by surprise and did not have the joint pre-trial statement before me. Since then I obtained a photostatic copy from the files and I would like to read——

"THE COURT: That won't be necessary. It is all in the record.

"MR. STOEHR: ——paragraph 6.

"THE COURT: I am familiar with it.''

However, the court's statement that he was "familiar with''

(paragraph 6) did not change the court's mind in respect of the issue of fraud, although a number of efforts were made by Stoehr, he was not at any stage of the trial thereafter permitted to introduce evidence of fraud.

Manifestly, it was prejudicial error for the trial court to deny appellant the opportunity to introduce evidence upon a recognized issue in the case. (*California Home Extension Assn.* v. *Hilborn,* 37 Cal.2d 459, 465 [235 P.2d 369]; *Schubkegel* v. *Gordino,* 56 Cal.App.2d 667, 673 [133 P.2d 475].)

In spite of the exclusion of the issue of fraud from the trial, the trial judge did nevertheless, as part of its findings, specifically Finding X, make a finding on the issue of fraud:

X

"It is not true that defendant Frederick G. Stoehr was induced to or did execute said note by false and fraudulent representations, promises and agreements, or any of them, made by plaintiff. It is true that said Frederick G. Stoehr executed said note as guarantor freely and in consideration of plaintiff's execution of the agreement Exhibit 1, whereby plaintiff sold all his right, title and interest in the business to Stoehr's client Aghajanian."

Respondent in his effort to defend this finding made several explanations thereof in his brief. We select the one which appears to be the least fallacious. Respondent says: "In the instant cause the main substantive error of which appellant complains is that evidence that he wished introduced on the issue of fraud was improperly excluded by the Court and that if such evidence had been admitted, the Court would have found for the appellant in that he would have been justified rescinding his guarantee. The evidence, however, to which appellant refers are the two letters which were heretofore discussed and attached to the appellant's motion for new trial as exhibits. Nothing in those letters even approaches the type and nature of evidence which would have to be present before a Court could rule that the respondent was guilty of fraud."

Wholly aside from the fact that we do not agree with the conclusions of respondent on his construction of the factual matters asserted by Stoehr on motion for a new trial, assuming such matters could be proved, respondent cites no authority for this novel position that such error was nonprejudicial. We feel, in light of the court's Finding X, that such error was inherently prejudicial. (*Shippey* v. *Shippey,*

58 Cal.App.2d 174 [136 P.2d 86]; *Mashbir* v. *Mashbir*, 29 Cal.App.2d 733, 737 [85 P.2d 482].)

The judgment is reversed.

Herndon, Acting P. J., and Ashburn, J.,* concurred.

*Retired Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.