[Civ. No. 15330. First Dist., Div. Two. May 18, 1953.]

LEOPOLD FRANK GRAF et al., Appellants, v. MERLE GARCIA et al., Respondents.

Arthur T. Bridgett, Frank B. Blum and McGuire & Lahanier for Appellants.

Campbell, Hayes & Custer, Austen D. Warburton, Hardy, Carley & Brenner, John M. Brenner and W. R. Dunn for Respondents.

DOOLING, J.—In an action for wrongful death of Albert Graf defendants and cross-complainants Garcia recovered a judgment on their cross-complaint following the verdict of a jury. The action arose out of a collision at the intersection of Alma Street and San Antonio Road in Santa Clara County.

Alma Street at this point runs northerly and southerly and parallels the main tracks of the Southern Pacific Railroad which lie on the westerly side of Alma Street, the nearest rail being about 65 feet from the westerly edge of the paved

portion of Alma. San Antonio Road runs easterly and westerly and crosses Alma Street at a right angle. In general the paved portion of San Antonio Road on both sides of Alma Street is 18 feet in width but on the westerly side of Alma commencing at the most easterly rail of the railroad track the sides of San Antonio Road spread out in wide arcs so that its paved portion where it intersects Alma is approximately 75 feet in width. At the time of the collision Alma Street was a through highway protected by stop signs on either side where San Antonio enters it. However because of the wide arc at the edge of San Antonio where it intersects Alma the stop sign on the westerly side of Alma was located about 36 feet from the center line of San Antonio, so far to the right of a car approaching Alma on San Antonio at a right angle that the direct beam of the headlights of such car might not fall upon the stop sign. At the time of the collision the letters "STO" appeared in white paint on the paved surface of San Antonio near its westerly intersection with Alma and beyond those letters a broken white line. The word "STOP" had originally been painted on the pavement with a solid white line beyond it. An officer called by defendants as a witness testified of these painted marks: "it had been worn quite a bit, the stop sign . . . from heavy travel."

The collision occurred about 8:30 p. m. on February 2, 1949. The night was very dark, the sky overcast with clouds and there is testimony that there was a very heavy mist falling, it was drizzling. The intersection was not lighted or illuminated in any way.

The car driven by the decedent Graf approached Alma Street traveling easterly on San Antonio Road. Two men, Lucas and Palmer, who were riding in the back seat of the automobile driven by decedent were produced by plaintiffs and testified that Graf brought his car to a stop on the westerly side of the railroad tracks. This would be at a point something over 80 feet from the westerly edge of Alma Street. The car proceeded from that point very slowly, at a speed of from 5 to 10 miles per hour. Both witnesses testified on direct that Graf brought his car to a second stop between the railroad tracks and Alma Street. On cross-examination in answer to leading questions they conceded that the second stop might have been a "rolling stop" or a "hesitation stop." Lucas summed up his testimony on this subject in the following language: "I said originally it was a stop, and you said it could possibly not be a stop. I said my impression was a

stop, it was going so slowly it could not have been a stop in every sense of the word, although we were going so slowly it might have, but it seemed to us, to me, at least, it seemed like a stop." Graf then shifted gears and his car proceeded into the intersection picking up to a speed of 10 to 15 miles per hour. Just before the collision Graf exclaimed: "Isn't that car going to stop?" or "Is it going to stop?" and the collision occurred. Neither witness had observed any stop sign, and neither saw the other car until the instant before the impact.

The defendant Merle Garcia testified that she was driving a station wagon in a southerly direction on Alma Street at a speed of 35 to 45 miles per hour. She first saw the headlights of the automobile driven by Graf on the westerly side of the railroad tracks, "back from the railroad tracks a little way, I don't know how far." She then looked away and did not see the Graf car again until "As I came into the intersection I turned my head back, and I looked out the window, and his headlights were shining directly into my right hand window, and he hit me."

The Graf car was spun around clockwise by the collision and the station wagon driven by Mrs. Garcia turned or rolled over onto its top and struck a tree approximately 65 feet from the point of collision with such force as to uproot it from the ground. There was no other traffic on either highway at this time.

Respondents contend that on this evidence the court should have granted a nonsuit or a directed verdict against appellants on their complaint, taking the position that the evidence establishes decedent's negligence as a matter of law. This contention may best be discussed in connection with appellants' argument that the trial court committed prejudicial error in refusing to give their tendered instructions that the plaintiffs were entitled to the presumption that the decedent Graf used due care for his own safety.

█ Although there are some opinions of the District Courts of Appeal which it may not be possible to reconcile with this rule, an examination of the decisions of the Supreme Court on the subject satisfies us that where the question concerns the conduct of a person who is dead the presumption of the exercise of due care is operative unless the testimony of the witnesses produced by the party who would benefit by the presumption is "wholly irreconcilable" with the presumption or "only one reasonable conclusion may be drawn

from the facts established by the testimony of" such witnesses and "(t)hat conclusion was that the deceased in that action had been guilty of contributory negligence." (*Westberg* v. *Willde*, 14 Cal.2d 360 [94 P.2d 590]; *Anthony* v. *Hobbie*, 25 Cal.2d 814 [155 P.2d 826]; *Scott* v. *Burke*, 39 Cal.2d 388 [247 P.2d 313]; *Anderson* v. *County of San Joaquin*, 110 Cal.App. 2d 703 [244 P.2d 75].)

The testimony of the eyewitnesses Lucas and Palmer produced by the appellants in this case is not of that character. Their testimony on the question of whether or not the decedent stopped his car a second time after crossing the railroad tracks and before entering the intersection does not establish with certainty that he did not, but beyond this there is another area which must be left to the determination of the jury upon which their testimony is not "wholly irreconcilable" with the presumption of due care. The jury was properly instructed that while the violation of a statute is negligence *per se* "such presumption is not conclusive, it may be overcome by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable, justifiable and such as might reasonably have been expected from a person of ordinary prudence."

 There was no evidence produced that decedent saw either the partly obliterated "STO" on the pavement or the stop sign far to his right outside the paved portion of San Antonio Road. There was no evidence produced that decedent was familiar with this intersection or knew that it was marked with stop signs, the only evidence touching that question evenly remotely being that decedent lived in San Francisco. There is affirmative evidence that the night was very dark, a mist was falling and the intersection was unlighted. Under the evidence a jury might reasonably conclude that decedent did not see the stop signs and that his failure to do so "might reasonably have been expected from a person of ordinary prudence." Under not dissimilar conditions of weather and darkness the Supreme Court recently held that the violation of a statutory duty to yield the right of way to a pedestrian in a crosswalk was excusable or justifiable. (*Ornales* v. *Wigger*, 35 Cal.2d 474 [218 P.2d 531].) The court said at page 480: "Certainly, the weather, the darkness and plaintiff's attire were all matters beyond the control of defendant. It was held in the Satterlee case that 'the issue as to whether the circumstances were such as to excuse violation' should be left to the trier of the fact." Under similar conditions of

weather and darkness whether the partially obliterated ''stop'' marks on the pavement and the unusually situated stop sign were, and in the exercise of ordinary care should have been, observed by decedent equally presents a question for the trier of fact.

Respondents argue further that the failure to yield the right of way was negligence *per se.* (Veh. Code, § 552.) Whether the station wagon was ''approaching so closely on the through highway as to constitute an immediate hazard'' (the language of § 552) likewise would seem to present a fact question. On the evidence the jury could find that the station wagon was traveling at least four times as fast as the decedent's car. From the broken intersection line painted on the pavement of San Antonio it is about 20 feet to the point of collision as marked by at least one witness. If the station wagon was traveling four times as fast as the decedent's car it would be at least 80 feet away when decedent crossed this partly obliterated limit line, and from the conduct of the station wagon after the collision the jury could find that it was traveling much faster. On that assumption it could have been much farther away. ''Section 552 'does not set a hard and fast rule for the conduct of drivers approaching through highways.' Whether a driver acts with due care or negligently in proceeding across a through highway is a jury question.'' (*Grasso* v. *Cunial,* 106 Cal.App.2d 294, 300 [235 P.2d 32|; *Stickel* v. *San Diego Elec. Ry. Co.,* 32 Cal.2d 157 |195 P.2d 416]; *Malinson* v. *Black,* 83 Cal.App.2d 375 [188 P.2d 788]; *Wilkinson* v. *Marcellus,* 51 Cal.App.2d 630, 633 [125 P.2d 584]; *Hershey* v. *Laswell,* 63 Cal.App.2d 219, 222 [146 P.2d 509].)

We conclude that the court erred to appellants' prejudice in refusing to instruct the jury on the presumption of the decedent's exercise of care. The suggestion in the briefs that such an instruction would violate the rule of *Pezzoni* v *City & County of San Francisco,* 101 Cal.App.2d 123 [225 P.2d 14] is answered by *Scott* v. *Burke, supra,* 39 Cal.2d 388, which at page 401 disapproved the rule of the Pezzoni case for which it is cited by respondents.

It seems equally clear that there is evidence in the record from which a jury could find that Mrs. Garcia was guilty of negligence in the operation of the station wagon. She first saw the headlights of the Graf car on the other side of the railroad tracks, something over 80 feet from the westerly edge of Alma Street. At that time she must have

been at least three or four hundred feet from the intersection with San Antonio Road, using the testimony of the speeds of the two automobiles as a basis of calculation. She did not again look in that direction or make any other observation of the Graf car until almost the instant of collision, although there was no other traffic in sight to claim her attention, and she proceeded into the intersection without appreciably slackening her speed. In *Grasso* v. *Cunial, supra,* 106 Cal.App.2d 294, at pp. 300-301, this court reviewed the cases on the duty of care of the driver of a car on a through highway. ■ These cases demonstrate that a driver on a through highway is not absolved from the duty of maintaining a proper lookout and keeping his car under control, and that where another car enters the highway at a time when the car on the through highway is not "approaching so closely . . . as to constitute an immediate hazard" the driver of the vehicle on the through highway is under a duty to yield the right of way to the car engaged in crossing it. (Veh. Code, § 552(b).)

■ The appellants proposed two instructions embodying the principle that a driver may be negligent under the circumstances of the particular situation even though he is driving within the legal speed limit. The principle is well settled (*Reynolds* v. *Filomeo,* 38 Cal.2d 5, 13-14 [236 P.2d 801] ; *Grasso* v. *Cunial, supra,* 106 Cal.App.2d 294, 301), and the error in failing to instruct on the subject is highlighted by the fact that almost at the close of the trial respondents proved by the traffic officer that there were no signs on Alma Street in the neighborhood of the collision that established a speed limit of less than 55 miles per hour. We cannot say that a jury of laymen uninstructed on the subject might not erroneously assume that in a 55-mile zone a speed under that limit, being permitted by law, could not be negligent.

■ The second of these instructions also dealt with the duty of maintaining a lookout and keeping the car under proper control, patterned on the language of *Reaugh* v. *Cudahy Packing Co.,* 189 Cal. 335, 340 [208 P. 125], and should have been given.

Judgment reversed.

Nourse, P. J., and Goodell, J., concurred.

A petition for a rehearing was denied June 17, 1953, and respondents' petition for a hearing by the Supreme Court was denied July 15, 1953. Traynor, J., was of the opinion that the petition should be granted.