[Civ. No. 24653. Second Dist., Div. Three. Apr. 18, 1961.]

BEULAH L. BAXTER, Individually and as Executrix, etc., Appellant, v. WILMER C. ROGERS, Respondent.

Alfred Nelson for Appellant.

A. H. Brazil for Respondent.

FORD, J.—In the trial court, the appellant Beulah L. Baxter unsuccessfully sought damages from respondent Wilmer C. Rogers for her personal injuries and, as executrix of the last will and testament of her deceased husband, for the latter's death. Both claims arose out of a collision between a vehicle driven by the appellant's husband, Howard W. Baxter, in which the appellant was riding, and a vehicle driven by the respondent Rogers. The collision occurred on August 12, 1957, at approximately 10:30 p. m.

The respondent was driving south on a highway known as Alternate U.S. 101 outside the city limits of San Luis Obispo. The appellant and her husband were returning to their home in Piedmont from a trip to Los Angeles. They had been traveling northeast on Portuguese Flat Road. This road joins Alternate U.S. 101 at an angle. Traffic on Portuguese Flat Road is required to stop before entering Alternate U.S. 101, which is a through highway at this point. The intersection is marked for vehicles traveling northeast on Portuguese Flat Road by a stop sign at the side of the road and the word "STOP" and a stop or limit line painted on the road. Due to the angle of the intersection, the stop or limit line is approximately 55 feet beyond the stop sign at the side of the road. Vehicles traveling north on Portuguese Flat Road must stop, cross the southbound lane of Alternate U.S. 101 at an angle, and continue north on the northbound lane of Alternate U.S. 101. The collision occurred as the vehicle in which the appellant was riding was crossing the southbound lane to get into the northbound lane. It was nighttime; the intersection was not lighted. The appellant testified that her husband made a boulevard stop but, in effect, that the respondent was traveling without lights. The respondent contended that the appellant's automobile failed to make the required stop at the intersection before coming onto Alternate 101 and was driven directly into the path of the respondent's vehicle. The jury returned verdicts for the respondent and against the appellant in her individual and representative capacities, respectively.

The appellant's sole contention is that certain instructions given to the jury were prejudicially erroneous.

Several days before the present action was commenced the respondent Rogers filed an action against Mr. Baxter's employer, McCormick and Baxter Creosoting Company, a corporation, to recover for his personal injuries and for the damage to his automobile. The two actions were consolidated for trial. At the trial, an attorney other than the attorney for the appellant in her action represented the decedent's employer. After the jury had been instructed and the two cases submitted to it, but before any verdict had been returned, a settlement was reached in the action brought by the respondent herein against McCormick and Baxter Creosoting Company. The jury was informed that that case had been withdrawn from its consideration.

The first instruction, the giving of which the appellant asserts constituted prejudicial error, was one concerning the credibility of witnesses and was requested by counsel for McCormick and Baxter Creosoting Company. It is in the language of the instruction numbered 26 (revised) of California Jury Instructions, Civil (BAJI), and is set forth in the margin.[1] It should be noted that during the cross-examination of Mr. Rogers, for the purpose of impeaching him he was questioned at length as to numerous changes he had made in the wording of his answers in his deposition after such testimony had been transcribed.

The appellant asserts that "the paramount issue in the whole case is whether the Rogers car did or did not have lights on immediately prior to the collision," that "the only possible direct plaintiff's evidence on that point comes from Mrs. Baxter who testified that no light from the Rogers car was visible to her or to Mr. Baxter," and that the challenged instruction "corroded every word she uttered at the trial." Citing sections 1847, 2051 and 2052 of the Code of Civil Pro-

---

[1] "In judging the credibility of witnesses, including any party who has testified, you shall have in mind the law that a witness is presumed to speak the truth. A witness, however, may be impeached and this presumption overcome by contradictory evidence; by the manner of the witness on the stand; the degree of intelligence exhibited by him; the character of his testimony; by evidence showing his motive or interest in the outcome of the case or his bias or prejudice for or against one of the parties; by evidence that on some former occasion he made a statement or statements inconsistent with his present testimony; by evidence adversely affecting the character of the witness for truth, honesty or integrity; by proof that he has been convicted of a felony.

"You will note that I do not say that any of the matters I have mentioned do overcome the presumption that the witness is speaking the truth; I only say that they may overcome that presumption. It is for you to decide whether they do or do not."

cedure,[2] counsel for the appellant argues: "By the common acceptation of words in the English language it is much more destructive of a person's testimony to be impeached than to have swept away the presumption of telling the truth. The code makes very definite distinctions with respect to this matter and sets up entirely different standards for impeachment or taking away the presumption for telling the truth. The quoted instruction mixes the whole together and while partially quoting each code section lets the legislature's mandate for eliminating the presumption of telling the truth be the criterion for the harsher stricture of impeaching the party."

The fallacy in the position of the appellant is that the meaning of the concept of impeachment as embodied in the challenged instruction is not as narrow as the appellant asserts.

The commonly accepted understanding in the minds of laymen is that to impeach is to challenge or discredit the testimony of a witness. As said in *People* v. *Shannon,* 147 Cal. App.2d 300, at page 305 [305 P.2d 101]: "The word 'impeach' is in common usage—meaning to discredit. Such ordinary words do not require defining. They are presumed to be understood by the jurors." (See also 3 Wigmore, Evidence (3d ed.), § 874; Witkin on California Evidence, § 640.)

The instruction does not purport to be aimed specifically at the appellant. It contains no incorrect statement of the law. (See *People* v. *Miles,* 143 Cal. 636, 640-641 [77 P. 666]; *People* v. *Amaya,* 134 Cal. 531, 540 [66 P. 794]; *Estate of Tompkins,* 123 Cal.App. 670, 677 [11 P.2d 886].) In view of the numerous changes which the respondent made in his

---

[2]Section 1847 is: "A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty, or integrity, or his motives, or by contradictory evidence; and the jury are the exclusive judges of his credibility."

Section 2051 is: " A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony unless he has previously received a full and unconditional pardon, based upon a certificate of rehabilitation."

Section 2052 is: "A witness may also be impeached by evidence that he has made, at other times, statements inconsistent with his present testimony; but before this can be done the statements must be related to him, with the circumstances of times, places and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. If the statements be in writing, they must be shown to the witness before any question is put to him concerning them."

deposition, as brought out in the course of his cross-examination, the instruction was just as beneficial to the appellant as it would have been to McCormick and Baxter Creosoting Company, the party on whose behalf it was requested. It is true that portions of the instruction were unnecessary under the evidence. Thus, the party offering the instruction should have omitted the words relating to the matter of conviction of a felony and the portion with respect to "evidence adversely affecting the character of the witness for truth, honesty or integrity," since no impeaching evidence of such nature appears in the record. (See *People* v. *Sellas,* 114 Cal.App. 367, 372-377 [300 P. 150]; *Ricdy* v. *Bidwell,* 93 Cal.App. 202, 208 [269 P. 682]; *cf. People* v. *Sweeney,* 55 Cal.2d 27, 38-39 [9 Cal.Rptr. 793, 357 P.2d 1049].) But in the light of the record under review, there is no sound basis for the appellant's assertion that there was prejudicial error in the giving of the challenged instruction.

 The remaining claim of error is based upon the giving of three instructions as to provisions of the Vehicle Code and the effect of a violation of the right of way of a motorist. Such instructions are set forth in the footnote of this opinion.[3] The appellant, Mrs. Baxter, testified that her husband stopped his automobile at the point where the stop sign was located. But she did not see the word "STOP" which

---

[3]The references are to the Vehicle Code as it existed at the time of the accident.

The first instruction was: "The pertinent portions of Section 577 of the California Vehicle Code provide:

"The driver of any vehicle upon approaching any entrance of a highway or intersection signposted with a stop sign as provided in this code, except as otherwise permitted or directed in this code, shall stop:

"(a) At a limit line, if marked, otherwise before entering the crosswalk on the near side of the intersection of [or], if not, then before entering such highway or intersection.

"(b) At any point within an intersection as required by a stop sign erected as permitted by Section 471."

The second instruction was: "Section 552 of the California Vehicle Code provides:

"(a) The driver of any vehicle shall stop as required by Section 577 of this code at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard.

"Any driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicle so about to enter or cross the through highway.

"(b) The driver of any vehicle shall stop as required by Section 577 in obedience to a stop sign within an intersection erected as authorized

was painted on the pavement beyond that point. No further stop was made before the collision occurred as far as she knew. A police officer testified that the distance between the stop sign and the limit line painted on the roadway was 50 to 60 feet. Another officer testified that he had made notations to the effect that the word "STOP" and the limit line on the roadway were "faint" at the time of the accident; those markings had not been recently painted. The gist of the appellant's attack upon the instructions is found in the following statement of her counsel in the opening brief: "The Court's mandate that Howard Baxter's crossing the faint line is negligence affords the jury no leeway whatever and prohibits the jurors from considering whether it is excusable or justifiable and in effect directs them to disregard its faintness."

The applicable law was recently stated by this court in *Smith* v. *Sugich Co.*, 179 Cal.App.2d 299, at page 307 [3 Cal.Rptr. 718], as follows: " 'It is settled that disobedience of a statute for which criminal sanctions are imposed is not negligence as a matter of law under all circumstances, but a presumption of negligence arises on proof of such a violation, and the presumption can be rebutted by evidence of justification or excuse.' (*Tossman* v. *Newman*, 37 Cal.2d 522, 525 [233 P.2d 1].) 'In the application of this rule each violation of a statutory requirement must be considered in connection with the surrounding circumstances. Ordinarily the excuse relied upon by the violator presents a question of fact for the jury's determination.' (*Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581, 590 [177 P.2d 279]; *Ornales* v. *Wigger*, 35 Cal.2d 474, 477 [218 P.2d 531].)

---

by Section 471, and after such stop shall yield the right of way to other vehicles on that part of any roadway protected by any stop sign which are so close as to constitute an immediate hazard.

"A driver having so yielded may proceed and the drivers of all other vehicles approaching on that part of the roadway protected by the stop sign shall yield the right of way to the vehicle so about to enter or cross such protected part of the roadway."

The third instruction was: "When the law says that one person has a right of way over another, its purpose simply is to establish a practical basis for necessary courtesy on the highway, and its meaning is that when at any given moment of the time, two persons, neither of whom then occupies the space in question, desire to proceed into the same place on the highway, one of them shall yield. The other has the privilege of the immediate use of the space in question. That privilege is his right of way.

"Failure to yield to one to whom the law has given the right of way is negligence."

██ "If there is any evidence of excuse or justification, the jury should be instructed on the issue whether the excuse or justification for violation of a statute appears from evidence of violation plus evidence of excuse or justification or from all the surrounding circumstances. (*Fuentes* v. *Panella*, 120 Cal.App.2d 175, 183 [260 P.2d 853].)" (See also *Alarid* v. *Vanier*, 50 Cal.2d 617, 621, 624 [327 P.2d 897].)

██ If, in the present case, the word "STOP" and the limit line painted on the roadway were partly obliterated so that they could not be readily seen, whether such condition arose from wear or because the markings were covered by dirt or otherwise affected, such fact could constitute an excuse for failure to stop at the limit line where the existence of such limit line was otherwise unknown to the motorist. (See *Graf* v. *Garcia*, 117 Cal.App.2d 792, 797-798 [256 P.2d 995].) But if, as urged by the appellant, there was error in the failure to instruct on the subject of excuse or justification, it was not prejudicial because it is clear that, as will be shown, the jury determined that there was no negligence on the part of the respondent.

As has been noted, the appellant sought to recover damages for her own personal injuries and, in addition, in her representative capacity for damages for the wrongful death of Mr. Baxter. The jury was instructed that contributory negligence on the part of Mr. Baxter would bar recovery in the action for wrongful death. But no issue of contributory negligence was submitted to the jury in the action for damages for the personal injuries to Mrs. Baxter. It must be presumed that the jury followed the instructions of the court. (*Keena* v. *United Railroads*, 197 Cal. 148, 152 [239 P. 1061]; 48 Cal. Jur.2d, Trial, § 158.) Accordingly, since the jury found against Mrs. Baxter in her action relating to her own personal injuries, the conclusion must be that the jury found in favor of the respondent Rogers on the issue of whether he was guilty of any negligence which was a proximate cause of the personal injuries to Mrs. Baxter. If no negligence of his was a proximate cause of the accident, no recovery could be had against him in either action. The appellant does not contend that there was a lack of substantial evidence to support the determination of the jury in favor of the respondent on that issue. (*Cf. Haney* v. *Takakura*, 2 Cal.App.2d 1, 9 [37 P.2d 170, 38 P.2d 160].) She cannot predicate a right to a reversal upon an erroneous instruction relating

to another issue the determination of which was not essential to the verdict reached. There has been no miscarriage of justice; no basis for a reversal of the judgment herein has been shown. (See *Alarid* v. *Vanier, supra,* 50 Cal.2d 617, 625.)

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied May 18, 1961, and appellant's petition for a hearing by the Supreme Court was denied June 14, 1961.