[Civ. No. 10863. Third Dist. Dec. 21, 1964.]

ROBERT V. CLEMENTS, Plaintiff and Appellant, v. MICHAEL CHARLES DONOHUE et al., Defendants and Respondents.

Silvers, Hauer & O'Neill, Jones, Lamb, Jarboe & Boli, Michael S. Jarboe and George W. Hauer for Plaintiff and Appellant.

McGregor, Bullen & Erich and Norwood R. Erich for Defendants and Respondents.

PIERCE, P. J.—Plaintiff appeals from a judgment following a defense verdict in a personal injury action. The car in which plaintiff was riding was hit by defendant* who had "run a stop sign" in violation of Vehicle Code section 22450,

---

*Although two defendants, the driver Michael Charles Donohue and Mars Metal Company, sued both as a corporation and a copartnership, were named, reference throughout this opinion is to defendant in the singular and refers to the defendant Donohue, the driver.

which requires the driver of a vehicle approaching an intersection posted with a stop sign to stop. The only question on appeal is whether defendant produced evidence sufficient to justify the jury's implied finding that violation of the statute was excused. We have decided that he did.

■ The accident happened at the intersection of Madison and Manzanita Avenues in Sacramento County. At the point of the accident Madison runs east and west, Manzanita north and south. The point of impact was in the northeast segment of the intersection. The intersection was posted with signs for a four-way stop, but, as regards westbound travel on Madison, it was, as we shall show hereinafter, inadequately posted.

On January 17, 1961, at approximately 9:25 p.m., Mrs. Rose Benner, the driver and owner of the car in which plaintiff was riding, driving north on Manzanita, approached and stopped at the intersection. There were no other cars stopped at the intersection and, although there were others approaching, she "thought that it was safe" (since they were required to stop) and she proceeded on into the intersection.

The night was cloudy and it was dark. There was no street light at the intersection. There were then three service stations on intersection corners. There is evidence that one of them was open and lighted, no evidence regarding the other two.

Defendant was westbound on Madison. He was driving with the left side of his vehicle between 1 and 2 feet from the center line. His speed was between 40 and 45 miles per hour and he slowed down as he approached the intersection. This approach was from around a curve which commences one-tenth of a mile east of the intersection. The curve is to the north. When he was 100 feet back from the intersection he observed the northbound Benner car. It was then stopped at the entrance to the intersection. He had never traveled this highway before and looked to see whether any stop sign directed him also to stop. Observing none, he assumed the Benner car was making a required stop to yield the right of way to westbound Madison Avenue traffic and he continued on. He then noticed the Benner car crossing the intersection in front of him too late to avoid the accident although he applied his brakes and swung to the left in his endeavor to do so. His vehicle laid down 59 feet of skidmarks. The front of his car struck the right side of the Benner car.

There *actually was* a stop sign directing the stopping of westbound traffic on Madison. However, defendant's failure to note its existence may be explained. At the point of the intersection Madison Avenue is 90 feet wide with two lanes

of pavement, each 45 feet wide. This was not, however, the normal width of the highway east of the intersection at the time. The California Highway Patrol officer who investigated the accident described Madison Avenue as ''tapering'' back from the intersection. And from photographs in evidence the width of Madison Avenue beyond the intersection to the west appears much narrower. One of these photographs (taken a day or two after the accident) in which westbound automobile traffic is visible shows quite clearly that the main traveled portion of Madison east of the intersection is concentrated into two lanes each approximately 18 feet in width, one eastbound, the other westbound, divided by a center line. At and for some distance back from the intersection two-thirds of the total width of each lane lies beyond the 18-foot main traveled portion on each side of the road. This ''outside'' area, though paved is usable principally to give access to the corner service stations or (on the right) for cars turning to travel northbound on Manzanita.[1] Adjacent to the north boundary of Madison is a sidewalk. The stop sign was not located at the curb corner. It was attached to a post located on the inside of the sidewalk 8 feet north of the curb. Thus on the night of the accident a westbound traveler (i.e., defendant) would be required to look 50 feet or more to his right to observe the only warning sign notifying him of his obligation to stop. (There were no markings on the pavement.)

We have labored to attempt a word picture of stop sign warning in its relation to travel westbound on Madison on the night of the accident since it is vital to defendant's contention he was justified in having failed to stop.

The instructions have not been included in the record on appeal but it has been stipulated that the trial court gave B.A.J.I. Instruction No. 149 (1962) Revised. By it the jury was instructed that violation of a statute (Vehicle Code section 22450 having been read) gave rise to a presumption; that the presumption could be overcome by defendant if he sustained the burden of producing evidence showing that under all the circumstances ''the conduct in question was excusable or justifiable''; that to prove excuse or justification to overcome the presumption of negligence ''the evidence must support a finding that the person who violated the statute did

---

[1] A photograph in evidence (Dft.'s Ex. ''A'') taken at a later date shows highway changes at this intersection which include a stop sign posted at the edge of the main traveled westbound lane buttressed by white posts set in a triangle. These effectually form an island separating westbound travel from that turning right.

what might reasonably be expected of a person of ordinary prudence who desired to comply with the law, acting under similar circumstances.''

This B.A.J.I. instruction, revised after the decision of our Supreme Court in *Alarid* v. *Vanier* (1958) 50 Cal.2d 617 [327 P.2d 897], follows the rule in that case. There the accident occurred when defendant's recently tested hydraulic foot brakes on a newly acquired used car had suddenly and inexplicably failed. After discussing and discarding former court-applied tests to determine excusability the court (per Chief Justice Gibson) says (on page 624) : ''In our opinion the correct test is whether the person who has violated a statute has sustained the burden of showing that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law.'' The court decided that under the facts of that case described above the defendant had satisfied that burden.

We think the same must be said regarding the facts in the case at bench. Justification or excuse has been said to exist where the party sought to be charged is ignorant nonnegligently of the facts which bring a statute into operation. (*Nevis* v. *Pacific Gas & Elec. Co.*, 43 Cal.2d 626, 633 [275 P.2d 761].) In *Graf* v. *Garcia* (1953) 117 Cal.App.2d 792, 797 [256 P.2d 995], the court held that a jury was justified in finding excusable a defendant's failure to see a stop sign far to his right outside the paved portion of a road on a dark misty night.[2] Dictum in *Baxter* v. *Rogers* (1961) 191 Cal. App.2d 358, says (at page 365) [12 Cal.Rptr. 635], citing *Graf* v. *Garcia, supra*: ''If, in the present case, the word 'STOP' and the limit line painted on the roadway were partly obliterated so that they could not be readily seen, whether such condition arose from wear or because the markings were covered by dirt or otherwise affected, such fact could constitute an excuse for failure to stop at the limit line where the existence of such limit line was otherwise unknown to the motorist.''

Here the defendant was traveling along an unknown highway on a dark cloudy winter night. He was unaware of any requirement that he, as a westbound traveler, must stop. On the contrary, seeing Mrs. Benner's car stopped he assumed that

---

[2] Language of the court in *Graf, supra,* inferred that things ''beyond the control'' of the person charged must be present to support a finding of excusability or justification. In *Alarid* v. *Vanier, supra,* the Supreme Court stated this to be too rigid a test; substituted that given above.

she had done so to meet the obligation of traffic on Manzanita to stop for travel on Madison—which was a reasonable assumption under the circumstances. Nevertheless, he had looked for a stop sign and, we think, it was excusable for him not to have seen it as it was then positioned. The unusual location of the sign plus the strange circumstance that no stop warning had been painted on the pavement were sufficient to justify the jury's determination under proper instructions that defendant's violation of the statute was excused.

A motion was made by respondents to dismiss the appeal as frivolous. Pending hearing of the motion we reached the appeal for oral argument and it was then argued and submitted.

The motion to dismiss is denied. The judgment is affirmed.

Friedman, J., and Van Dyke, J.,* concurred.

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.