Filed 11/3/23  P. v. McQuade CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RICHARD PATRICK MCQUADE,<br><br>Defendant and Appellant. | F084527<br><br>(Kern Super. Ct. No. RF008687A)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Charles R. Brehmer, Judge.

Mi Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kimberley A. Donohue, and Craig S. Meyers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Richard Patrick McQuade was convicted by a jury of gross vehicular manslaughter for the death of Brooke Curry, driving while under the influence and speeding causing injury, reckless driving causing injury, possession of a firearm by a felon, possession of ammunition by a felon, possession of methamphetamine while armed with a firearm, being under the influence of methamphetamine while possessing a firearm, possession of methamphetamine, possession of methamphetamine paraphernalia, and driving without a license.  With respect to the reckless driving and driving under the influence offenses, the jury also found true that defendant personally inflicted great bodily injury (GBI).  The trial court sentenced defendant to a total term of 11 years.  On appeal, defendant contends that:  (1) with respect to gross vehicular manslaughter, the trial court erred by failing to adequately instruct the jury on the elements of the predicate infraction of failing to stop at the limit line of an intersection; (2) the conviction for simple possession must be reversed because it is a lesser included offense of possession of methamphetamine while armed with a firearm; and (3) the trial court erred by imposing two separate GBI enhancements.  We vacate the conviction for possession of methamphetamine and strike the three-year GBI enhancements.  We otherwise affirm.

## PROCEDURAL BACKGROUND

On August 19, 2021, the Kern County District Attorney filed an amended information charging defendant with:  gross vehicular manslaughter (Pen. Code, § 191.5, subd. (a);[1] count 1); negligent vehicular manslaughter while intoxicated (§ 191.5, subd. (b); count 2); driving while under the influence while committing an infraction and causing injury (Veh. Code, § 23153, subd. (f); count 3); reckless driving causing injury (Veh. Code § 23105, subd. (a); count 4); possession of a firearm by a felon (§ 29800, subd. (a)(1); count 5); possession of ammunition by a felon (§ 30305, subd. (a); count 6); possession of methamphetamine while armed with a firearm (Health & Saf. Code,

---

[1] All further undesignated statutory references are to the Penal Code unless otherwise noted.

2.

§ 11370.1, subd. (a); count 7); being under the influence of methamphetamine while possessing a firearm (Health & Saf. Code, § 11550, subd. (e); count 8); possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 9); possession of methamphetamine paraphernalia (Health & Saf. Code, § 11364; count 10); and driving without a license (Veh. Code, § 12500, subd. (a); count 11). As to counts 3 and 4, the information alleged that defendant personally inflicted GBI under section 12022.7, subdivision (a) and section 12022.7, subdivision (b).

On May 19, 2022, the jury found defendant guilty on all counts, save for count 2 which was presented to the jury as a lesser included offense of count 1. The jury also found true both GBI enhancements on counts 3 and 4.

On June 23, 2022, the court sentenced defendant to an aggregate term of 11 years as follows: on count 1, 10 years (the upper term); on count 7, one year (one-third of the middle term) consecutive to the term on count 1; on counts 3 and 4, three years (the upper term) plus a three-year enhancement under section 12022.7, subdivision (a) and a five-year enhancement under section 12022.7, subdivision (b), stayed pursuant to section 654; on count 9, a one-year term, stayed pursuant to section 654;[2] and on count 11, 180 days to run concurrently with the sentence on count 1.

On June 28, 2022, defendant filed his notice of appeal.

**FACTUAL BACKGROUND**

Between 4:00 a.m. and 8:00 a.m. on May 14, 2021, defendant smoked six to seven "hits" of methamphetamine. About 10 hours later, defendant rode his motorcycle to a gas station in Ridgecrest. At the gas station, defendant saw Curry. Defendant and Curry were acquaintances, and defendant asked Curry if she wanted to go for a ride on his motorcycle. Curry agreed. Defendant wore a helmet, but Curry did not. Defendant testified that he drove between 20 and 40 miles per hour and did not see a stop sign at an

---

[2] The trial court also imposed and stayed sentences on counts 5, 6, 8, and 10, but those sentences are not relevant for purposes of this appeal.

intersection because the sun was in his eyes. When defendant perceived the stop sign, it was "too late" and he applied his brakes too hard, which caused the motorcycle to swerve, skid, fall, and slide on its side. Defendant held on to the motorcycle as it crashed, but Curry was ejected onto the pavement. Gouge marks and friction marks indicated that the motorcycle braked for 100 feet and slid on its side for 92 feet.

When police and medical personnel arrived, defendant was sitting by his motorcycle, and Curry was lying face up on the ground. Defendant told the police that he did not see the stop sign and did not have enough time to react to it. Defendant also admitted to smoking methamphetamine that morning. After conducting field sobriety tests, the police arrested defendant for being under the influence of methamphetamine. Officers then searched defendant and found a baggie with a useable amount of methamphetamine and a glass pipe. The police also found a loaded handgun in defendant's backpack.

McQuade suffered a broken shoulder blade and a dislocated rib, and Curry sustained significant head injuries. Curry was treated at a hospital for 20 days, but she never regained consciousness and succumbed to her injuries.

## DISCUSSION

### I.     Jury Instruction Error

#### A.     *Parties' Arguments*

Defendant argues that the trial court "misinstructed" the jury on count 1. Count 1 in part required the jury to find that defendant committed infractions, but the court failed to instruct on the elements of the failing to stop at the limit line infraction. The term "limit line" has a technical meaning, but no defining instruction was provided. Thus, the jury was not given proper guidance regarding whether defendant failed to stop at the limit line and could not adequately decide the matter in conformity with the law.

4.

The People argue that defendant forfeited this error by failing to object.[3]  The People also argue, inter alia, that the count 1 instruction made it clear that the defendant was required to stop at the limit line of an intersection.  This comports with the language of Vehicle Code section 22450, subdivision (a), and uses language that is commonly understood.  Therefore, the jury was adequately instructed.

We agree with the People that the trial court properly instructed the jury.

**B.**     *Additional Background*

On May 18, 2022, the trial court and the parties discussed jury instructions.  The court granted the prosecutor's motion to identify three infractions (speeding, driving over 25 miles per hour in a residential zone, and failing to stop at the limit line of a stop sign) for purposes of count 1.  The court stated that it would give CALCRIM Nos. 590 and 595 and, with respect to failing to stop at the limit line, the court explained that it would instruct "just what the allegation about the stop sign since there's no jury instruction that's preprinted on that."  There were no objections made to this statement or with respect to the limit line infraction.

The jury was instructed the same day.  The jury was given three CALCRIM instructions on three different forms of vehicular manslaughter (gross, ordinary negligence, and misdemeanor).  With respect to gross vehicular manslaughter, the jury was given a modified CALCRIM 590 instruction that read in pertinent part:

> "The defendant is charged in Count One with gross vehicular manslaughter while intoxicated in violation of … section 191.5(a).

> "To prove that the defendant is guilty of this crime, the People must prove that:

---

[3] We do not find forfeiture.  Defendant argues that the alleged instruction error violated three federal constitutional rights because an element of an offense was not adequately defined.  Since defendant's arguments implicate "substantial rights," there is no forfeiture on appeal despite defense counsel's failure to object.  (*People v. Thomas* (2023) 14 Cal.5th 327, 392; *People v. Ramirez* (2021) 10 Cal.5th 983, 1000; § 1259.)

"1.     The defendant drove under the influence of a drug;

"2.     While driving that vehicle under the influence of a drug, the defendant also committed an infraction;

"3.     the defendant committed the infraction with gross negligence;

"AND

"4.     The defendant's grossly negligent conduct caused the death of another person.

"The People allege that defendant committed the following infractions:  1) violation of the basic speed law, 2) driving faster than 25 miles per hour in a residential district, and 3) failing to stop at the limit line at an intersection.

"CALCRIM 595 tells you what the People must prove in order to prove that the defendant drove in violation of the basic speed law and faster than 25 miles per hour in a residential district.

[¶] … [¶]

"The People allege that defendant committed the following infractions:  1) violation of the basic speed law, 2) driving faster than 25 miles per hour in a residential district, and 3) failing to stop at the limit line at an intersection.  You may not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these alleged infractions and you all agree on which infraction the defendant committed."

Also, the jury was given an instruction entitled:  "Vehicular Manslaughter:  Special Instruction."  This instruction read:

"To prove that the defendant failed to stop for a stop sign, the People must prove that:

"1.     The defendant drove a vehicle on a highway;

"2.     While driving, the defendant approached a stop sign at the entrance to an intersection; and

"3.     As he approached the stop sign at the entrance to the intersection, the defendant did not stop at a marked limit line."

During closing argument, the prosecutor highlighted evidence relating to the limit line violation:

> "[P]erhaps most importantly, [exhibit] number 11 is the stop sign, and [exhibit] 12 – you can see it – is the limit line.

> "That's where everybody is supposed to stop at this stop sign. It's to control that four-way intersection between Wilson [St.] and Helena [St.]. It's to control that intersection so that people don't crash. What happens when a motor Vehicle Code infraction occurs? Human life is placed at risk."

After discussing other aspects of the case, the prosecutor discussed the infractions alleged in support of count 1. The prosecutor argued:

> "The defendant also committed an infraction. Here and other instructions – they come in three flavors. The first is the basic speed law. He's going faster than roadway conditions. He was going faster than the roadway condition allowed him to go.

> "Remember that includes the sun directly in his eyes. There is the prima facie speed limit, what the judge read to you about going faster than 25 miles per hour in a residential district. Residential areas, 25 miles per hour is the speed limit. You go faster than that, that's an infraction. That was proved you by the defendant's own words on the day of the crash.

> [¶ … ¶]

> "[T]he third infraction is failing to stop for the stop sign at the limit line. Again, the photographs prove that because the defendant's motorcycle is in the intersection in the eastbound lane facing to the east, which was not his direction of travel.

> "When considering these infractions, you must all agree. You can agree one. You can agree on two of them. You can agree on all three of them, but you must at least agree on one ….

> "It's completely up to you. You all must agree that one of the infractions has been proved beyond a reasonable doubt. Again, my submission to you is the defendant's motorcycle, which is in the middle of the intersection, he didn't stop at the limit line for that stop sign."

Defense counsel made no objections regarding the prosecutor's arguments concerning the limit line infraction, nor did defense counsel address the limit line infraction during his closing argument.

### C. *Legal Standard*

"A trial court must instruct on each element of a charged offense, even when the defendant does not propose a complete instruction or object to the court's failure to provide one." (*People v. Brown* (2023) 14 Cal.5th 453, 461.) " '[T]he language of a statute defining a crime or defense is generally an appropriate and desirable basis for an instruction, and is ordinarily sufficient when the defendant fails to request amplification.' " (*People v. Estrada* (1995) 11 Cal.4th 568, 574.) However, a trial court has a sua sponte duty to define a statutory term if the "term 'does not have a plain, unambiguous meaning,' has a 'particular and restricted meaning' [citation], or has a technical meaning peculiar to the law or an area of law [citation]." (*People v. Roberge* (2003) 29 Cal.4th 979, 988; see also *People v. Krebs* (2019) 8 Cal.5th 265, 331; *People v. Ellis* (1999) 69 Cal.App.4th 1334, 1338.) "When a word or phrase ' "is commonly understood by those familiar with the English language and is not used in a technical sense peculiar to the law, the court is not required to give an instruction as to its meaning in the absence of a request." ' " (*People v. Estrada*, at p. 574; see also *People v. Krebs*, at p. 331; *People v. Ellis*, at p. 1338 [no sua sponte duty to include amplifying or clarifying instructions for commonly understood terms].) Thus, "terms are held to require clarification by the trial court when their statutory definition differs from the meaning that might be ascribed to the same terms in common parlance." (*People v. Estrada*, at pp. 574–575; *People v. Bush* (2017) 7 Cal.App.5th 457, 485.) In the process of assessing the adequacy of jury instructions, the instructions are considered as a whole. (*People v. Ramirez*, *supra*, 10 Cal.5th at p. 1001.)

**D.     *Analysis***

The issue is whether the trial court adequately instructed the jury regarding the infraction of failing to stop at the limit line of an intersection, which was one of three infractions relied upon by the prosecutor to support the gross vehicular manslaughter offense.  There is no CALCRIM instruction for failing to stop at a limit line.  Therefore, we turn to the language of the statute that defines this infraction.

Vehicle Code section 22450 provides in relevant part:  "The driver of any vehicle approaching a stop sign at the entrance to, or within, an intersection shall stop at a limit line, if marked …."  (Veh. Code, § 22450, subd. (a).)  This law "requires the driver of a vehicle approaching an intersection posted with a stop sign to stop."  (*Clements v. Donohue* (1964) 231 Cal.App.2d 417, 418; see also *Hefner v. County of Sacramento* (1988) 197 Cal.App.3d 1007, 1010, fn. 2 ["Where limit lines are present, drivers are required to stop their vehicles before crossing the line"].)  To our knowledge, no published case has expressly stated what the elements of a section 22450, subdivision (a) violation are.  However, for purposes of this case, a plain reading of section 22450, subdivision (a) shows that a violation occurs when:  (1) a defendant is driving a vehicle, (2) approaches a stop sign at an intersection, and (3) fails to stop at the marked limit line at the intersection.  (Veh. Code, § 22450, subd. (a).)

In relation to the jury instructions given, the jury was instructed under CALCRIM No. 590 in part that defendant committed an infraction by "failing to stop at the limit line at an intersection."  The jury was also given the "Voluntary Manslaughter:  Special Instruction."  As quoted above, the special instruction corresponds to the elements of a Vehicle Code section 22450 infraction.  When CALCRIM No. 590 and the "Voluntary Manslaughter:  Special Instruction" instruction are read in conjunction (*People v. Ramirez*, *supra*, 10 Cal.5th at p. 1001), the jury was properly instructed on each of the elements of a Vehicle Code section 22450, subdivision (a) infraction.

Defendant contends that there was a "misinstruction" because a necessary definition was omitted. Specifically, defendant argues that the definition of a "limit line" as found in Vehicle Code section 377 gives that term a technical noncommon meaning and that the trial court was required to sua sponte include this definition in the instructions.

A "limit line" is defined as "a solid white line not less than 12 nor more than 24 inches wide, extending across a roadway or any portion thereof to indicate the point at which traffic is required to stop in compliance with legal requirements." (Veh. Code, § 377.) The only aspect of Vehicle Code section 377 that might be considered technical is the part of the definition that defines the width of the limit line, between 12 and 24 inches wide. However, defendant points to no authority that requires any aspect of Vehicle Code section 377 to be given to a jury when a Vehicle Code section 22450, subdivision (a) infraction is involved. It seems to us that the reason for the absence of such authority is twofold. First, the dimensions are clearly stated, which means that all state and local authorities know precisely how wide they must make their intersections' limit lines. Second, marked limit lines in front of stop signs are prevalent throughout the streets of California. The experiences and training of every person who has a California driver's license are such that the average Californian knows what stop signs and limit lines are and that drivers must stop at these limit lines when approaching intersections. In other words, the limit lines of a stop sign at an intersection are ubiquitous and their purpose is readily known and understood by Californians. We are aware of no other meanings for "limit lines," particularly in relation to intersections, in which a meaning other than that provided by Vehicle Code section 377 would be commonly understood. Therefore, all jurors would understand that the painted limit line in front of a stop sign at an intersection is the line where a vehicle must stop. (*Hefner v. County of Sacramento*, *supra*, 197 Cal.App.3d at p. 1010, fn. 2). Because of the common understanding and knowledge of a stop sign's limit line at an intersection, and in the absence of a dispute

regarding whether a line is an actual "limit line" because of the line's width, we cannot hold that a trial court is required to include the Vehicle Code section 377 definition of a "limit line" whenever a Vehicle Code section 22450, subdivision (a) infraction is at issue. Since defendant did not object or request an amplifying instruction for the term "limit line,"[4] the court did not err by failing to sua sponte provide the jury with a definition. (*People v. Estrada*, *supra*, 11 Cal.4th at p. 574; *People v. Bush*, *supra*, 7 Cal.App.5th at p. 485; *People v. Ellis*, *supra*, 69 Cal.App.4th at p. 1338.)

In sum, we conclude that the trial court did not misinstruct the jury with respect to count 1 and Vehicle Code section 22450, subdivision (a).

## II. Count 9 – Possession of Methamphetamine

The parties agree that the conviction on count 9 must be reversed because it is a lesser included offense of his conviction on count 7. We agree with the parties.

"The law prohibits simultaneous convictions for both a greater offense and a lesser offense necessarily included within it, when based on the same conduct." (*People v. Milward* (2011) 52 Cal.4th 580, 589.) Under the "accusatory pleading test," if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, then the lesser offense is necessarily included in the greater offense. (*People v. Lopez* (2020) 9 Cal.5th 254, 270.)

Here, the August 2021 information alleged under count 7 that defendant possessed a firearm while also possessing methamphetamine and alleged under count 9 that defendant possessed methamphetamine. We agree with the parties that the facts alleged under count 7 necessarily included all of the elements of count 9. One cannot possess a firearm together with methamphetamine in violation of Health and Safety Code section

---

[4] Indeed, we note that defendant admitted he only saw the stop sign when it was "too late," and defense counsel never argued that Vehicle Code section 22450, subdivision (a) was not violated or specifically addressed the prosecutor's Vehicle Code section 22450, subdivision (a) arguments.

11.

11370.1, subdivision (a), without also possessing methamphetamine in violation of Health and Safety Code section 11377, subdivision (a).  Therefore, like the parties, we conclude that count 9 is a lesser included offense of count 7 under the accusatory pleading test.  (*People v. Lopez*, *supra*, 9 Cal.5th at p. 270.)  Because defendant was convicted on count 7, the conviction on count 9 must be reversed, and count 9 must be dismissed.  (*People v. Milward*, *supra*, 52 Cal.4th at p. 589; *People v. Vasquez* (2021) 63 Cal.App.5th 107, 115.)

### III.    GBI Enhancements on Counts 3 and 4

#### A.    *Parties' Arguments*

Defendant argues that section 12022.7, subdivision (h), prohibits imposing enhancements under both section 12022.7, subdivisions (a)[5] and (b).[6]  Because the trial court violated section 12022.7, subdivision (h), the three-year enhancement of section 12022.7, subdivision (a) must be stricken from both counts 3 and 4.  Further, defendant argues that, because multiple GBI enhancements were imposed for conduct against only Curry during a single incident, the section 12022.7, subdivision (b) enhancement should have only been imposed on either count 3 or count 4, but not both.

The People agree that the trial court's sentence is contrary to section 12022.7, subdivision (h) but contend that the three-year enhancement of section 12022.7, subdivision (a) should be stayed instead of stricken.  The People also contend that the trial court did not err by imposing sentences on the GBI enhancement for counts 3 and 4 and staying those sentences because a stayed sentence is not an executed sentence.

---

[5] Section 12022.7, subdivision (a) provides for "an additional and consecutive [three-year] term of imprisonment" for any person who personally inflicts GBI on any person (other than an accomplice) in the commission or attempted commission of a felony.  (§ 12022.7, subd. (a).)

[6] Section 12022.7, subdivision (b) provides for "an additional and consecutive [five-year] term of imprisonment" for any person who personally inflicts GBI on any person (other than an accomplice) which causes that victim to become comatose due to brain injury or to suffer paralysis of a permanent nature.  (§ 12022.7, subd. (b).)

We agree with defendant that the section 12022.7, subdivision (a) enhancement must be stricken, but we agree with the People that the trial court did not err by imposing a section 12022.7, subdivision (b) enhancement on both counts 3 and 4.

**B.**     *Legal Standards*

California law provides limits on the number of sentences for GBI enhancements in certain circumstances.  Section 12022.7, subdivision (h), provides:  "The court shall impose the additional terms of imprisonment under either subdivision (a), (b), (c), or (d), but may not impose more than one of those terms for the same offense."  When multiple enhancements can be imposed for GBI committed on the same victim in the commission of a single offense, "only the greatest of those enhancements shall be imposed for that offense."  (§ 1170.1, subd. (g).)  Additionally, section 654 prohibits multiple GBI enhancements if a single individual was harmed through a single indivisible course of conduct.  (*People v. Wooten* (2013) 214 Cal.App.4th 121, 132.)

**C.**     *Analysis*

**1.**     **Enhancements Under Section 12022.7, Subdivisions (a) and (b)**

The parties agree, and so do we, that the trial court violated section 12022.7, subdivision (h) when it imposed both the three-year enhancement of section 12022.7, subdivision (a) and the five-year enhancement of section 12022.7, subdivision (b) on counts 3 and 4.  Section 12022.7, subdivision (h) allowed the court to impose only one GBI enhancement on each of counts 3 and 4.  (§ 12022.7, subd. (h).)  Further, the parties also agree, and so do we, that the three-year term of section 12022.7, subdivision (a) could not have been imposed.  Section 1170.1, subdivision (g), required the court to impose a sentence on the GBI enhancement that provided for the greater sentence, which was section 12022.7, subdivision (b)'s five-year term.  (§ 1170.1, subd. (g).)

Despite the parties' agreement that the trial court could only impose section 12022.7, subdivision (b)'s five-year term, the parties disagree as to the appropriate remedy.  Nevertheless, we believe that the prohibition in section 12022.7,

13.

subdivision (h) is clear as applied to this case. A stayed sentence remains a sentence that has been imposed; it is just one that has yet to be executed. (*People v. Jones* (2015) 236 Cal.App.4th 1411, 1416.) Since section 12022.7, subdivision (h) prohibits the *imposition* of a term of imprisonment, staying the three-year term still results in a term *imposed* in violation of section 12022.7, subdivision (h). Therefore, the appropriate remedy is to strike the section 12022.7, subdivision (a) three-year term.

### 2. Imposition of a GBI Enhancement on Both Count 3 and Count 4

Defendant relies on *People v. Moringlane* (1982) 127 Cal.App.3d 811 to argue that imposition of one of the section 12022.7, subdivision (b) enhancements should be stricken. *Moringlane* found a violation of section 654 where the lower court imposed three GBI enhancements based on a single act (firing multiple shots from a rifle) that inflicted GBI against a single individual. (*Moringlane*, at pp. 815–819.) The People do not attempt to distinguish *Moringlane* or argue that *Moringlane*'s interpretation of section 654 was wrongly decided or inapplicable to this case. Accordingly, we will assume for purposes of this appeal that Curry was harmed by an indivisible course of conduct by defendant and that the principles of *Moringlane* are implicated.

So assuming, we cannot agree with defendant that the appropriate course is to strike one of the section 12022.7, subdivision (b) enhancements. It is true that *Moringlane* struck two enhancements to remedy a section 654 violation. (*People v. Moringlane*, *supra*, 127 Cal.App.3d at p. 819.) However, section 654 protects against multiple punishment, not multiple conviction. (*People v. Sloan* (2007) 42 Cal.4th 110, 116; *People v. Reed* (2006) 38 Cal.4th 1224, 1226–1227.) When multiple convictions arising out of the same act or course of conduct are involved, in order to give effect to section 654's prohibition against multiple *punishment*, the trial court must stay *execution* of the sentence on the convictions for which multiple punishment is prohibited. (*People v. Correa* (2012) 54 Cal.4th 331, 336–337; *People v. Reed*, *supra*, 38 Cal.4th at p. 1227.) Thus, it is recognized that staying execution of a sentence does not constitute *punishment*

for purposes of section 654.  (See *People v. Pearson* (1986) 42 Cal.3d 351, 359–360.)  In the context of multiple enhancements, other courts that have found a violation of section 654 have remedied the violation by staying the enhancement.  (E.g. *People v. Reeves* (2001) 91 Cal.App.4th 14, 55–57; *People v. Arndt* (1999) 76 Cal.App.4th 387, 397, 399.)  In this case, the entirety of the sentences on counts 3 and 4, including of necessity the section 12022.7, subdivision (b) enhancements, were stayed pursuant to section 654, with the sentence on count 1 being the primary sentence to be executed.  Consistent with *Reeves* and *Arndt*, we conclude that the trial court did not violate section 654 because the entirety of the sentences on counts 3 and 4 were stayed.  Therefore, we will not strike the section 12022.7, subdivision (b) enhancement on either count 3 or count 4.  (*People v. Reeves*, at pp. 55–57; see also *People v. Arndt*, at p. 399.)

## DISPOSITION

Defendant's conviction on count 9 (possession of methamphetamine) is vacated and count 9 is dismissed.  The three-year enhancements imposed under section 12022.7, subdivision (a) on count 3 and count 4 are stricken.  The judgment is otherwise affirmed.  The clerk of the Kern County Superior Court is directed to prepare and forward to all appropriate parties an amended abstract of judgment consistent with this opinion.


POOCHIGIAN, Acting P. J.

WE CONCUR:


DETJEN, J.


SNAUFFER, J.


15.