[Civ. No. 4251. Second Appellate District, Division Two.—October 26, 1923.]

## EDNA GORNSTEIN, Respondent, v. MAX PRIVER, Appellant.

[1] NEGLIGENCE—PERSONAL INJURIES—DAMAGES—COLLISION BETWEEN TRUCKS CARRYING PASSENGERS — FINDING—EVIDENCE.—In this action for damages for personal injuries sustained by plaintiff as a result of a collision between a truck owned by the defendant and operated by his servant and hired for the purpose of carrying passengers to and from picnic grounds, on the rear end of which

plaintiff was seated in such manner that her legs hung over the end of the truck, and a second truck likewise owned by defendant and operated by another of his servants and hired for the same purpose, which collision occurred when the second truck bumped into the rear of the other after the latter had come to a standstill to permit a street-car in front of it to take on and let off passengers, taking all the evidence together, it was sufficient to sustain the finding that the driver of the second truck was guilty of negligence in that he failed to exercise ordinary care to avoid the collision.

[2] ID.—CARRYING PASSENGERS FOR HIRE—PRIVATE CARRIER.—A person owning motor-trucks used by him in a general transfer business and who occasionally on Sundays and holidays rents one or more of the trucks to carry passengers to and from picnic grounds is not a common carrier while engaged in carrying such passengers, but is a private carrier for hire.

[3] ID.—PRIVATE CARRIER—DEGREE OF CARE.—While a private carrier for hire is not bound to exercise the highest degree of care for the safety of his passengers, as in the case of a common carrier, he is bound to exercise ordinary care and diligence to carry his passengers safely; and if he lets a vehicle for hire, in charge of a driver in his employ, to persons who control the movements of the machine only so far as to direct the driver where to go, he is liable to the passengers for injuries due to the driver's negligence, although he may have exercised due care to employ a careful and prudent servant.

[4] ID. — TRUCK FOLLOWED BY TRUCK — DUTY OF DRIVER OF SECOND TRUCK.—In such action, the driver of the second truck observing the manner in which plaintiff and her companions were seated on the truck ahead of him, it was his duty to have his machine under such control that he would be able to avoid a collision if the foremost truck were obliged to come to a halt by reason of the stopping of the street-car which it was following.

[5] ID. — COLLISION BETWEEN TRUCKS — EVIDENCE OF NEGLIGENCE. — The mere fact that the driver of a vehicle does run down the vehicle ahead of him furnishes some evidence that he either was traveling at too high a rate of speed for a highway crowded with other vehicular travel or that he was following too closely the machine ahead of him.

---

2. Person or company operating automobile for hire as a common carrier, note, **L. R. A.** 1918F, 468..

3. Who is responsible for negligence of chauffeur operating leased or demonstrating car, notes, **Ann. Cas.** 1916A, 673; 40 **L. R. A.** (N. S.) 457; 44 **L. R. A.** (N. S.) 113; 51 **L. R. A.** (N. S.) 1164.

Duty and liability of carrier of passengers for hire by automobile, note, 4 **A. L. R.** 1504.

[6] ID.—QUESTION OF FACT.—The mere fact that a vehicle is moving in close proximity to another one ahead of it, and keeping up with it, does not of itself constitute negligence *per se*; but whether in any particular case the operator of the rear vehicle is negligent if he drives his machine so as to cause a collision with the one ahead depends upon all the circumstances surrounding the happening of the accident, and almost invariably presents a question of fact for the decision of the jury or of the trial judge where the case is tried without a jury.

[7] ID.—STATUS OF DEFENDANT — FINDING — ABSENCE OF INJURY.—In such action the defendant was not injured by the court's failure to find in so many words that he was not a common carrier, even though plaintiff did allege in her complaint that such was defendant's status, where upon evidence sufficient to justify it the court found that defendant's driver was guilty of negligence, that is, that he failed to exercise ordinary care.

[8] ID.—JUDGMENT—FINDINGS.—Where the findings on certain facts necessarily control the judgment, the failure to find upon other issues does not constitute reversible error.

[9] ID.—POSITION AND CONDUCT OF PLAINTIFF — CONTRIBUTORY NEGLIGENCE.—In such action plaintiff was not guilty of contributory negligence by reason of the fact that she was sitting with her legs hanging over the edge of the truck and that at the time of the collision she was leaning over and talking to the person seated near her on the rear of the truck.

[10] ID.—POSITION OF PLAINTIFF — CONDUCT OF DEFENDANT — INVITATION.—In such action, the effect of defendant's servants' conduct in permitting, without objection, plaintiff and the other members of the picnic party to seat themselves on the edges of the truck with their legs and feet dangling over the sides was the same as if they had expressly invited plaintiff to ride on the truck in the manner that she did, and had assured her that it was a suitable and safe way for her to seat herself.

[11] ID.—OPERATION OF TRUCK—NEGLIGENCE OF DRIVER NOT ASSUMED BY PLAINTIFF.—In such action, if plaintiff was imprudent in seating herself as she did, then, while she may be deemed to have assumed all the risks of danger ordinarily incident to such position of peril, she did not assume the risk of danger created by the negligence of defendant's drivers in their operation of the trucks.

[12] ID.—CONTRIBUTORY NEGLIGENCE.—It is not contributory negligence to fail to look out for danger where there is no reason to apprehend any.

9. Personal care required of one riding in automobile driven by another as affecting his right to recover in case of collision with other automobile, note, 18 A. L. R. 352.

Id.—Duty Owing by One to Another—Performance of—Right to Assume.—The general rule is that one to whom a duty of care is owing by another has the right to assume that the person who owes such duty will perform it; and in the absence of reasonable ground to think otherwise, it is not negligence on the part of the one to whom the duty is owing to assume that he will not be exposed to a danger which can come to him only through a violation of that duty by the person owing it.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frederick W. Houser, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. S. Baird, J. A. Adair and Henry O. Wackerbarth for Appellant.

Will H. Light and Wm. T. Blakely for Respondent.

FINLAYSON, P. J.—This is an action to recover damages for personal injuries alleged to have been sustained through the negligence of defendant while plaintiff was a passenger on an autotruck owned by defendant and operated by one of his servants. The answer denies the allegation of negligence on defendant's part and pleads contributory negligence on the part of plaintiff. The case was tried by the court without a jury. Findings upon all the material issues were in favor of plaintiff and judgment was entered for her accordingly. From that judgment the defendant appeals.

Defendant, who was engaged in the general transfer business in the city of Los Angeles, owned motor-trucks which were used by him in that business for the transfer of freight. Occasionally, on Sundays and holidays, he would rent one or more of the trucks to carry passengers to and from picnic grounds. Plaintiff was a member of the Sinai Chapter of Sing Israel. On June 6, 1920, she and certain other members of that religious organization were passengers on two of defendant's trucks, which had been hired of defendant for the purpose of carrying plaintiff and her companions to and from a place called Fish Canyon, where a picnic was to be held. Defendant furnished the driver for each truck. At the request of the person who was in charge of the arrangements on behalf of the picnickers defendant's servants took the staves off the sides of the trucks, and a num-

ber of the passengers, including plaintiff, sat on the floor in such a manner that their legs hung over the sides or end of the truck on which they were riding. They sat thus both going to and returning from the picnic grounds. Plaintiff and three others sat in this manner on the rear of the truck on which they were riding—their legs hanging over the end. On the return trip one of the trucks followed the other, the rear truck being at times a block behind the one ahead and at other times in closer proximity to it. Plaintiff was seated on the foremost truck. As the two vehicles entered the city of Los Angeles they proceeded along North Broadway, a much-traveled thoroughfare along which electrically propelled street-cars are operated. The truck on which plaintiff was seated proceeded for some distance behind a street-car traveling in the same direction. As the street-car approached College Street it stopped to discharge passengers. As it came to a stop the foremost truck, the one on which plaintiff was seated, stopped suddenly. Its driver testified that he came to a stop "quite snappy"—to use his own language; that he stopped to permit persons to get on and off the street-car; that he gave the usual signal of his intention to stop, but that he did not know whether anybody behind him saw it; that he traveled a distance of about twenty feet from the time he started to stop his truck until it came to a full stop; that a truck as large and as heavy as the two which were that day hired of his employer cannot ordinarily be stopped in a distance short of its length; that the length of each truck was about twenty feet; that a second or two after his truck came to a standstill it was bumped into by the one behind it. The driver of the rear truck was not produced as a witness. It seems he could not be found at the date of the trial. In the collision plaintiff received injuries to her feet and legs before she could raise them to a place of safety. The part of the floor of the foremost truck which plaintiff occupied was close to that side of the truck which was on her right as she faced the rear. Three of her companions who sat with her on the rear of the truck were seated on the floor to her left. Just prior to the impact plaintiff was leaning over the lap of the person seated next to her, talking to the second person to her left. As she finished her conversation with that person she turned her head toward the direction from which the second truck was com-

ing, and then observed for the first time that it was about to collide with the truck on which she was seated—too late, however, to enable her to draw up her legs and avoid the injury.

Appellant's principal contentions are: (1) That there was no showing of negligence on his part; and (2) that the evidence affirmatively and indisputably shows that plaintiff was guilty of contributory negligence.

[1] Taking all the evidence together it clearly is sufficient to sustain the finding that the driver of the second truck— a driver who was furnished by defendant for the occasion— was guilty of negligence in that he failed to exercise ordinary care to avoid the collision. [2] Defendant, it is true, is not a common carrier of passengers, and his liability, therefore, is not that of a common carrier. He was, however, on this occasion a private carrier for hire. (1 Hutchinson on Carriers, sec. 35.) [3] While a private carrier for hire is not bound to exercise the highest degree of care for the safety of his passengers, as in the case of a common carrier, he is bound to exercise ordinary care and diligence to carry his passengers safely. (1 Hutchinson on Carriers, sec. 37; *Forbes* v. *Reinman*, 112 Ark. 417 [51 L. R. A. (N. S.) 1164, 166 S. W. 563].) And if he lets a vehicle for hire, in charge of a driver in his employ, to persons who control the movements of the machine only so far as to direct the driver where to go, he is liable to the passengers for injuries due to the driver's negligence, although he may have exercised due care to employ a careful and prudent servant. (*Forbes* v. *Reinman, supra; Meyers* v. *Tri-State Automobile Co.*, 121 Minn. 68 [44 L. R. A. (N. S.) 113, 140 N. W. 184].)

The driver of the truck which was following the one on which plaintiff was seated, and who unquestionably must have seen the street-car which the truck ahead of him was following, as well as the manner in which plaintiff was seated on the foremost truck, was bound to anticipate that the truck which he was following might be obliged to come to a sudden stop if compelled to do so by the street-car or by any of the numerous other vehicles which were using the highway in common. [4] Observing the manner in which plaintiff and her companions were seated on the truck ahead of him, it was his duty to have his machine under such

control that he would be able to avoid a collision if the foremost truck were obliged to come to a halt by reason of the stopping of the street-car which it was following. It must be apparent that in operating an autotruck over a public street the driver, under ordinary circumstances, cannot run down a vehicle proceeding in the same direction without having been negligent in the operation of his own vehicle, unless it appears that the collision was due to the negligent conduct of the driver of the other vehicle, which is not the case here. [5] The mere fact that he does run down the vehicle ahead of him furnishes some evidence that he either was traveling at too high a rate of speed for a highway crowded with other vehicular travel or that he was following too closely the machine ahead of him. (See *O'Connor* v. *United Railroads,* 168 Cal. 47 [141 Pac. 809].) [6] True, the mere fact that a vehicle is moving in close proximity to another one ahead of it, and keeping up with it, does not of itself constitute negligence *per se;* but whether in any particular case the operator of the rear vehicle is negligent if he drives his machine so as to cause a collision with the one ahead depends upon all the circumstances surrounding the happening of the accident, and almost invariably presents a question of fact for the decision of the jury or of the trial judge where, as here, the case is tried without a jury. Our conclusion is that the lower court was warranted in finding that defendant's driver was guilty of negligence.

[7] Appellant was not injured by the court's failure to find in so many words that he is not a common carrier—even though plaintiff did allege in her complaint that such was defendant's status. As a private carrier for hire, defendant was liable for injuries to his passengers proximately caused by his own or his servant's ordinary negligence. Upon evidence sufficient to justify it, the court found that defendant's driver was guilty of negligence—that is, that he failed to exercise ordinary care. [8] This finding of negligence, coupled with the finding that there was no contributory negligence, necessitated a judgment for plaintiff; and the rule is that where the findings on certain facts necessarily control the judgment the failure to find upon other issues does not constitute reversible error. (*Southern Pac. R. R. Co.* v. *Dufour,* 95 Cal. 615 [30 Pac. 783].)

[9] Appellant's theory of contributory negligence is based upon the claim (1) that plaintiff placed herself in a position of danger by sitting with her legs hanging over the edge of the truck, and (2) that because she leaned over and talked to the person seated near her on the rear of the truck, she negligently failed to use her senses to perceive the impending danger.

The general rule that a plaintiff cannot recover for the negligence of the defendant if his own want of care or negligence has in any degree contributed to the result is of course indisputable. But we do not think the circumstances here indicate any want of ordinary care on the part of plaintiff. In disposing of this question we must keep in mind that as to the passengers on the trucks defendant must be held to have been present in the persons of his servants, and that what the latter knew and did he knew and did. Defendant's bookkeeper testified that it is his employer's custom to furnish the trucks with the staves taken out, when that is the wish of the persons hiring them. Defendant's servants not only knew that the staves were taken off these trucks, but, without giving any warning, admonition, or suggestion of danger, they permitted plaintiff and the other members of the picnic party to seat themselves on the edges of the trucks with their legs and feet dangling over the sides. By their silence, as well as by their acts, defendant's servants threw plaintiff and her fellow-passengers off their guard and gave them reason to believe that their positions on the trucks were not perilous. [10] The effect of the conduct of defendant's servants is the same as if they had expressly invited plaintiff to ride on the truck in the manner that she did, and had assured her that it was a suitable and safe way for her to seat herself. (*Clark* v. *Eighth Ave. Ry. Co.,* 36 N. Y. 135, 136 [93 Am. Dec. 495].)

[11] If plaintiff was imprudent in seating herself as she did, then, while she may be deemed to have assumed all the risks of danger ordinarily incident to such position of peril, she did not assume the risk of danger created by the negligence of defendant's drivers in their operation of the trucks. Her position on the truck, however perilous it may have been, was taken with defendant's tacit approval and consent, and it did not dissolve the contract of carriage. It did not sever plaintiff's relation of passenger to defendant as a

private carrier for hire. Nor did it relieve defendant from that duty of protection which he owed plaintiff as a passenger on one of his trucks. For her safety while she was such passenger, defendant owed plaintiff the right to ordinary care on the part of his servants, that being the degree of care which is due by a private carrier for hire and was the degree of care which plaintiff was entitled to demand and to expect. In other words, though she assumed all the risks ordinarily incident to the position in which she seated herself on the truck, whether it was known to her to be dangerous or not—such risks, for example, as might be due to the ordinary and usual swaying of the truck or its ordinary and usual movements—still she did not forfeit her right to exact from defendant and his servants the same care to which she would have been entitled had she taken the safest seat on the vehicle. (See *Willmott* v. *Corrigan etc. Ry. Co.*, 106 Mo. 535 [17 S. W. 490].) Had plaintiff sustained injury solely because of the position in which she had seated herself and without any negligence on the part of defendant's drivers in their operation of the trucks, she probably could not have recovered any damages from defendant. Thus, for example, if, during the usual and ordinary movements of the truck on which she was riding and without any negligence on the part of defendant's drivers in their management of the machines, plaintiff, solely by reason of the position which she had taken, had been bounced off the truck, she probably would have had no remedy against defendant, for the very good reason that in that case she would have to attribute her injury solely to her own voluntary conduct. That would be one of the risks ordinarily incident to plaintiff's position on the truck. But while assuming risks of that character, plaintiff did not assume the risk of danger created by the negligent misconduct of defendant's drivers; and for injury caused by such misconduct defendant is liable.

As we have stated, plaintiff's position must have been observed by the driver of the rear truck. The care which the law demanded of him was commensurate with the peril incident to the position in which he knew that plaintiff had placed herself, and it was his duty to exercise such reasonable care in regulating the speed of his vehicle and its proximity to the truck ahead as might be necessary to protect plaintiff from injury during all the time that she was a

passenger on the foremost truck. His failure to exercise such reasonable care in the operation of his truck must be considered the sole proximate cause of the injury, notwithstanding the perilous position in which plaintiff, with defendant's permission, had placed herself. Her position on the truck was only the condition—the remote cause of the injury. See *Willmott* v. *Corrigan etc. Ry. Co., supra*—a case the reasoning of which is applicable here, notwithstanding the defendant in that case was a common carrier; for the only difference between the duty owing to his passenger by a common carrier and the duty owing by a private carrier for hire is in the degree of care which each must exercise, the one owing to his passenger the utmost care and diligence, the other owing but ordinary care and diligence, each being liable, however, for injuries proximately caused by his failure to exercise that degree of care which his passenger may rightfully demand and expect of him.

This action bears no resemblance to those cases in which it is held that a passenger on a railroad car is guilty of contributory negligence if he places his arm or head or some other part of his body outside of the car window and is injured by being struck by some obstacle which is properly near the railroad tracks—such, for example, as a wood-pile situated near the rails. In those cases it is held that the passenger has no remedy for the reason that his injury is attributable solely to his own voluntary act. By his conduct he assumes all such risks as arise from the usual and ordinary movements of the car. In the instant case it was not the usual and ordinary movements of the truck, but the active negligence of defendant's driver which caused the injury. And that, as we have seen, was a risk which plaintiff did not assume. On the contrary, the relation of carrier and passenger, with all that those terms connote, continuing up to the time of plaintiff's injury, she was entitled to rely upon the assumption that no harm would come to her through any negligent misconduct on the part of defendant or his servants.

Was respondent guilty of contributory negligence because she permitted her attention to be diverted while conversing with her fellow-passenger, with the result that she did not see the imminence of the collision in time to draw her legs up out of harm's way? To engage in animated conversa-

tion with each other, with consequent inattention to many of the happenings about them, is conduct which doubtless is usual and customary with young folk and merrymakers returning from a day's outing in the country. Of course, the mere fact that such conduct may be customary or usual would not necessarily absolve plaintiff from the charge of contributory negligence, the test to which her conduct must be put being this: What would an ordinarily cautious, prudent, and careful person have done under the same circumstances? But if we put her conduct to that test we cannot say, as a matter of law, that her inattention was contributory negligence. **[12]** It is not contributory negligence to fail to look out for danger where there is no reason to apprehend any. (*Engel* v. *Smith,* 82 Mich. 1 [21 Am. St. Rep. 549, 46 N. W. 21].) Here the defendant owed plaintiff a particular duty. He and his drivers were in duty bound to exercise ordinary care not to injure plaintiff, who had the right to expect that reasonable care and caution would be exercised by the drivers to avoid a collision of one truck with the other. She was not required to exercise extraordinary precaution to anticipate the possibility of negligence on the part of defendant or his servants. She was required to use only such ordinary precaution as persons of reasonable care and prudence usually exercise under the same circumstances.

**[13]** The general rule is that one to whom a duty of care is owing by another has the right to assume that the person who owes such duty will perform it; and in the absence of reasonable ground to think otherwise, it is not negligence on the part of the one to whom the duty is owing to assume that he will not be exposed to a danger which can come to him only through a violation of that duty by the person owing it. (29 Cyc., 516, 517. See, also, *Robinson* v. *Western Pac. R. R. Co.,* 48 Cal. 421; *Harris* v. *Johnson,* 174 Cal. 58 [Ann. Cas. 1918E, 560, L. R. A. 1917C, 477, 161 Pac 1155].) A like principle is stated in Ruling Case Law as follows: "While a person who asserts a right of recovery on the ground of negligence must be prepared to show that he exercised vigilance to discover and avoid the danger embodied in the offending instrumentality, he excuses himself for an omission to take active measures— such as looking, listening and making inspections—by proof

that the defendant owed to him a duty of care, and that he relied upon the performance thereof. The presumption is that duties fixed by law or custom will be discharged in due form; and everyone to whom a duty is due has a right to assume that it will be performed—he need not anticipate negligence on the part of his obligor, even though the latter has been negligent on other occasions.'' (20 R. C. L., tit. ''Negligence,'' sec. 101.)

The authorities cited by appellant are not in point. Most of them are cases involving the application of the universally recognized doctrine that where no special duty of care is owing by the defendant upon which the plaintiff is entitled to rely, ordinary prudence requires the plaintiff to make use of his faculties of seeing and hearing before attempting a dangerous act or operation, such, for example, as crossing the tracks of a steam railroad. But that is not this case.

One or two other points are suggested by appellant. Suffice it to say that we have examined them with care but do not think they possess sufficient merit to be entitled to any special discussion.

The judgment is affirmed.

Works, J., and Craig, J., concurred.