[Civ. No. 32818. Second Dist., Div. Four. July 30, 1969.]

MARJORIE A. GAULT, Plaintiff and Appellant, v. JOANNE MAY et al., Defendants and Respondents.

Graham, Donnahoe & Kuhn and Lewis Graham for Plaintiff and Appellant.

Belcher, Henzie & Biegenzahn and George E. Moore for Defendants and Respondents.

DUNN, J.—Trial of appellant's injury suit resulted in a defense verdict. The appellate record consists of the clerk's transcript, as augmented, and a settled statement. Since error is claimed in the giving and refusal of certain instructions a recital of the evidence is necessary.

Appellant testified she was an experienced roller skater and that on May 30, 1963 she went to respondents' roller skating rink where she rented a pair of shoe skates. After putting them on and briefly trying them out she noticed the left skate pulled to the left. She complained to respondents' employee who told her he would fix it. She sat in a chair with her left skate resting on a stool while the employee did something to it with a wrench, following which he told her it would be all right. Appellant stood up, started toward the rink and noticed the left skate still pulled slightly to her left. As she proceeded further this straightened out and, believing the skates were all right, she stepped onto the rink but after taking three or four strides she fell and was injured when her left skate stuck and stopped. Her husband picked her up and removed the skates from her feet, following which he tested them. He testified that he found the left front wheel of the left skate would stick and bind. He informed respondents' employee of this discovery and that his wife had been hurt. On two occasions several days thereafter, according to his testimony, he notified the rink owners of the accident leaving his telephone number. Three children of appellant testified they did not see the accident but were aware their mother had fallen.

Respondent Milton May testified that he and his wife, respondent Joanne May, had purchased the rink one month before the alleged accident and that he owned another rink at a different location. He closed the subject rink for one week

during which time remodeling was done and all shoe skates, 500 pairs of them, were checked, oiled and repaired as needed. Thereafter, the skates were checked, oiled and inspected on a daily schedule that required three months again to go through the entire stock of skates. He had been a professional in the roller skating business since 1942 and testified he had never seen a roller skate wheel stick or bind because of faulty bearings or for any other reason. He had received no notice of appellant's claimed accident until approximately four months thereafter when her attorney sent him a letter. On inquiring of his employees, each denied any knowledge of an accident. Joanne May was not present at the rink on the day of the purported accident and first learned of it on receipt of the attorney's letter. Harry Miller testified he had worked for respondents from the time they first purchased the rink. He had participated in amateur rolling skating competition for several years before the claimed accident date and since then had turned professional. He testified he had never seen a wheel on a roller skate stick or bind by reason of worn or faulty bearings or for any other reason.

**I.** *Did The Trial Court Err In Failing To Give Appellant's Requested Instruction On Breach Of Warranty?*

■ Appellant asked the court to give several instructions (BAJI Nos. 401-B.1, 401-C and 404-A) embodying the theory of breach of warranty, also requesting one on the theory of liability without fault for a defect causing damage (BAJI 218-A). She complains because these instructions were refused. There was no error.

In her complaint, typically confusing by the use of numerous fictitious "Does," appellant stated a first cause of action based upon alleged negligence and a second (against certain Does, only) embodying a theory of breach of warranty. Neither answering defendant was expressly named and we therefore assume each was served as a "Doe." The record furnished us does not indicate appellant's compliance with Code of Civil Procedure, section 474 as to service upon fictitiously named defendants and the respondents' answer does not state the capacity in which they were served or answered. There is thus some question as to whether or not the complaint stated any cause of action against these particular defendants for alleged breach of warranty.

Of more significance, however, is the fact that at pretrial appellant abandoned any claim for breach of warranty. The pretrial conference order contains the usual recitation that

the parties filed joint and separate pretrial statements setting forth the "legal contentions made by each party . . . and the issues remaining in dispute." The statements were incorporated in the order which also dismissed "all fictitious defendants." Appellant's pretrial statement lists the issues as being: negligence, proximate cause, contributory negligence and damages and respondents' statement lists the same legal issues and adds assumption of risk. Neither side claimed breach of warranty was a legal issue and it was thus abandoned under rule 216, California Rules of Court, which states in part: "When filed, the pretrial conference order becomes a part of the record in the case and, where inconsistent with the pleadings, controls the subsequent course of the case unless modified at or before trial to prevent manifest injustice." At no time did appellant ask the court to correct or amend the pretrial order or the complaint. Respecting rule 216 it has been said: ▊ "The pretrial order supersedes the pleadings, and an issue not preserved in the pretrial order is not an issue at the time of trial. No evidence need be presented upon an issue not preserved in the pretrial order, and no findings of fact can properly be made upon a nonissue." *Agricultural Ins. Co.* v. *Smith* (1968) 262 Cal.App.2d 772, 777 [69 Cal. Rptr. 50]. Also see: *Bates* v. *Stoehr* (1964) 229 Cal.App.2d 628 [40 Cal.Rptr. 432]; *Thompson* v. *Guyer-Hays* (1962) 207 Cal. App.2d 366 [24 Cal.Rptr. 461]; 22 A.L.R.2d 599, 601-609, §§ 2, 3 and 4 Annot., Pretrial Conference—Effect of Order. No error appears.

▊ As to the requested instruction on liability without fault (BAJI No. 218-A), such properly may be offered though not specifically alleged where breach of warranty is pleaded. *Vandermark* v. *Ford Motor Co.* (1964) 61 Cal.2d 256 [37 Cal.Rptr. 896, 391 P.2d 168]. After *Vandermark,* it would seem the better practice now to plead it specifically. As noted, however, there was no pleading supporting an instruction on strict liability since warranty was not an issue in the case after the pretrial was held.

II. *Does The Record Justify The Giving Of An Instruction On Contributory Negligence?*

At respondents' request the trial court read to the jury several instructions relating to contributory negligence, including BAJI No. 103.1. Appellant contends this was error. ▊ On appeal, evidence ordinarily is to be viewed in a manner most strongly favoring the judgment. This is not the rule, however, when it is contended there was no evidence

justifying the giving of an instruction. For example, if an appellant claims the trial court should have instructed upon some theory involved in his case, the point must be determined by drawing from the evidence any reasonable inference which would support the giving of the instruction, even though this tends toward reversal and against the judgment.

 " 'It is the duty of the court to instruct on every theory of the case finding support in the evidence.' " *Leming* v. *Oilfields Trucking Co.* (1955) 44 Cal.2d 343, 352 [282 P.2d 23, 51 A.L.R.2d 107]. "Viewing the evidence in the light most favorable to the application of the doctrine and indulging every reasonable inference in support thereof [citing cases], we have concluded that plaintiffs were entitled to the omitted instruction." *Daniels* v. *City & County of San Francisco* (1953) 40 Cal.2d 614, 617 [255 P.2d 785].

 The evidence produced by appellant disclosed no basis for finding contributory negligence. While under that evidence appellant's fall may well have been caused by her own conduct, negligent causation is not shown. Respondents' evidence was of two kinds: (1) a denial that the accident happened and that they were informed thereof; (2) roller skate wheels do not stick or bind. Evidence, as in (1) above, of the nonoccurrence of an accident and the absence of any notice thereof does not tend to establish contributory negligence. Accordingly, the only basis for the instruction must be found in the other evidence offered by respondents, as in (2). This also fails to disclose fault of the appellant. To find fault, we must infer from the evidence that, since skate wheels do not stick, appellant must have tripped and fallen for some reason involving her own negligence. As we believe such inference unsupportable, we conclude the giving of instructions on contributory negligence was error.

Respondents cite and rely upon two cases from other states, *Fry* v. *Alexander* (1955 Okla.) 290 P.2d 397 and *Damer* v. *State* (Ct. Cl. N.Y. 1962) 34 Misc.2d 363 [228 N.Y.S.2d 997]. Both are clearly distinguishable. *Fry* involved the propriety of an order granting a new trial for plaintiff, after verdict for defendant, on the sole ground stated by the trial judge that "he did not agree" with it. This was a roller skating accident, purportedly due to something loose on the underside of the skate. In related discussion, an instruction on contributory negligence was held properly given by the trial court, as there was evidence the trucks of the skates were adjustable and defendant owner gave plaintiff a wrench with

which to adjust them. *Damer* involved a claim based on a skating accident, wherein the only evidence showed the claimant skated several minutes and then fell. There was no other evidence pertinent to the question of fault.

III. *Does The Record Justify The Giving Of An Instruction On Assumption Of Risk?*

 At respondents' request the trial court instructed on assumption of risk. The giving of such instruction was error in our opinion. Respondents claim the instruction was justified, pointing to the evidence that after appellant was told by respondents' employee that her left skate had been fixed, she stood on it and started to the rink but noticed that it still pulled to the left. From this, they argue it reasonable to infer she had full knowledge of the factual cause of her accident and of the dangers inherent therein. Respondents ignore the fact appellant testified that as she proceeded the skate straightened out. Furthermore, there is no testimony showing any necessary connection between the pulling of a skate to the left and the sticking of a wheel.

 "To justify application of the doctrine of assumption of risk there must be evidence to show that the victim had knowledge and appreciation of the specific danger involved. [Citing cases.] There must be a voluntary acceptance of the specific risk involved and such acceptance, whether expressed or implied, must have been with knowledge and appreciation of the risk. . . . Under ordinary circumstances the plaintiff will not be taken to assume any risk of either activities or conditions of which he is ignorant. Furthermore, he must not only know of the facts which create the danger, but he must comprehend and appreciate the danger itself. . . . His failure to exercise ordinary care to discover the danger is not properly a matter of assumption of risk, but the defense of contributory negligence." *Myers* v. *King* (1969) 272 Cal.App.2d 571, 580-581 [77 Cal.Rptr. 625]. Also see: *Shahinian* v. *McCormick* (1963) 59 Cal.2d 554 [30 Cal.Rptr. 521, 381 P.2d 377]; *Vierra* v. *Fifth Ave. Rental Service* (1963) 60 Cal.2d 266 [32 Cal.Rptr. 193, 383 P.2d 777].

There being no evidence to establish all necessary elements, no assumption of any risk appears and instructing on such theory was error.

 We conclude the errors in instructing on the two defenses of contributory negligence and assumption of risk require reversal under article VI, section 13 (formerly § 4½) of the state Constitution.

IV. *Did The Trial Court Err In Refusing To Instruct On The Doctrine Of Res Ipsa Loquitur?*

By virtue of our foregoing conclusions, we do not reach this contention nor need we decide it for purposes of retrial. Quite obviously, we do not know what evidence may be offered at a retrial and the trial court must be left free to determine if *res ipsa loquitur* may, or may not apply, after hearing all the evidence.

Judgment for respondents is reversed.

Files, P. J., and Jefferson, J., concurred.