[Civ. No. 24664. First Dist., Div. Two. Oct. 21, 1969.]

CHESTER R. KEETON, Plaintiff and Appellant, v.
RALPH J. HENNING, Defendant and Respondent.

## COUNSEL

Johnson, Speed & Johnson and Arthur L. Johnson, Jr., for Plaintiff and Appellant.
Gassett, Perry, Katzen & Frank and Simon J. Katzen for Defendant and Respondent.

## OPINION

**SHOEMAKER, P. J.**—Plaintiff appeals from a judgment for defendant in an action to recover damages for personal injuries allegedly sustained as a result of defendant's negligence.

The evidence is without conflict. Plaintiff Chester Keeton and defendant Ralph Henning were transporting a ton of hay on Henning's pickup truck to a barn in Mountain View, where they intended to unload the hay. When they reached the area of the barn, defendant put the truck in a position to back up toward the barn door in order that the hay could be unloaded and placed in the barn. Plaintiff testified that it was necessary for him to guide defendant back toward the barn because the bales of hay were piled so high on the bed of the truck that defendant did not have a clear view behind him. He made two attempts to guide defendant back toward the barn while standing on the ground and directing him by way of hand signals and verbal directions; this proved unsuccessful, so defendant suggested to plaintiff that he stand on the tailgate of the truck and direct him from that position; plaintiff agreed to do so because he considered the procedure a perfectly safe one, had done it many times in the past and felt that it was the only really effective way to direct defendant in the backing maneuver.

Plaintiff mounted the tailgate about 20 to 30 feet from the barn and positioned himself on the left side thereof, facing toward the front of the truck, so that he could signal defendant with his left hand while he used his right hand to hold on to a hay hook which was embedded in one of the bales on the truck. Defendant had the left-hand door of the truck open so that he could lean out and observe plaintiff's hand signals while steering the truck with his right hand. This procedure proved entirely effective and he was able to direct the truck to the proper spot, in relation to the barn, which was approximately seven feet from the barn door. He then signaled to defendant to stop the truck and defendant complied with this direction. However,

immediately thereafter the truck jerked in such a manner that he was thrown from the tailgate and hurled backward and to the side some 10 feet. Plaintiff stated that he landed on his back and experienced such pain that he was unable to get up. The hay hook which he had been holding in his hand was lying beside him, and a bale of hay had also fallen from the truck. Plaintiff stated that when he asked defendant what had happened, defendant replied that after stopping the truck, he had turned off the ignition and had then allowed his foot to slip off the clutch before the motor had died and while the truck was still in gear.

Defendant's testimony was substantially identical with plaintiff's in virtually all respects. He recalled backing the truck in accord with plaintiff's hand signals and verbal directions and also recalled plaintiff's having instructed him to stop. He admitted that he had brought the truck to a stop and that immediately thereafter his foot had slipped off the clutch before the motor died, causing the truck to jerk. Defendant stated that he could have "stopped easier" if he had only taken more time and had let the motor die completely before he let the clutch out. However, he explained that he never gave it a thought, that he just turned the key off and jumped out, allowing his foot to slip off the clutch while the motor was still running. After defendant had gotten out of the truck, he found plaintiff lying on the ground on his back some 8 to 10 feet from the truck. Defendant, like plaintiff, stated that he had never considered that plaintiff was in any danger standing on the tailgate of the truck.

Plaintiff contends on appeal that the court erred in refusing his requested instructions on the doctrine of res ipsa loquitur and the doctrine of last clear chance.

The court's refusal to instruct on the doctrine of res ipsa loquitur was clearly proper under the rule espoused in *Akins* v. *County of Sonoma* (1967) 67 Cal.2d 185, 195 [60 Cal.Rptr. 499, 430 P.2d 57]. In that case, the court quoted language from *DiMare* v. *Cresci* (1962) 58 Cal.2d 292, 299 [23 Cal.Rptr. 772, 393 P.2d 860], to the effect that the introduction of evidence of specific acts of negligence may deprive the plaintiff of the benefit of the doctrine of res ipsa loquitur if the facts as to the cause of the accident and the care exercised by the defendant are as shown as a matter of law and there is thus no justification for resort to the inference of negligence. The court in *Akins* then stated: "In the present case the facts are undisputed as to how the accident happened and the care exercised by defendants. . . . The issue is whether the undisputed conduct of defendants constituted negligence which proximately contributed to plaintiff's injuries, and there is no room for resort to inference as to what defendant did or did not do. Accordingly, the court was correct in ruling that the res ipsa loquitur doctrine did not apply." (P. 195.)

■ Here, as in the case quoted, there was no conflict whatever as to the manner in which the accident occurred and the care exercised by defendant. He made no attempt to suggest that his foot slipped from the clutch as the result of an accident which he could not, in the exercise of reasonable care, have avoided. To the contrary, he admitted that he could have stopped more easily if he had only taken the time but explained that he never gave it a thought and just turned off the key and jumped from the truck. Under such circumstances, there was clearly no need to resort to the doctrine of res ipsa loquitur.

■ Turning next to the propriety of the court's refusal to instruct on last clear chance, the elements of that doctrine are set forth in *Brandelius* v. *City & County of San Francisco* (1957) 47 Cal.2d 729, 743 [306 P.2d 432], wherein the court states that the doctrine may be invoked only if the trier of fact could find "(1) that the plaintiff was in a position of danger and, by his own negligence, became unable to escape from such position by the use of ordinary care, either because it became physically impossible for him to escape or because he was totally unaware of the danger; (2) that defendant knew that plaintiff was in a position of danger and further knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape therefrom; and (3) that thereafter defendant had the last clear chance to avoid the accident by the exercise of ordinary care but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure."

It has been held that the defendant's chance to avoid the accident must be clear, as opposed to merely bare or possible. (*Godinez* v. *Soares* (1963) 216 Cal.App.2d 145, 152 [30 Cal.Rptr. 767]; *Berton* v. *Cochran* (1947) 81 Cal.App.2d 776, 779-782 [185 P.2d 349]; *Dalley* v. *Williams* (1946) 73 Cal.App.2d 427 [166 P.2d 595].) ■ The doctrine does not involve the splitting of seconds and is inapplicable where the evidence shows that the defendant had no time to avoid the accident after the emergency arose. (*Godinez* v. *Soares, supra,* at pp. 152-153; *Hickambottom* v. *Cooper Transp. Co.* (1958) 163 Cal.App.2d 489 [329 P.2d 609]; *Hall* v. *Atchison, T.& S. F. Ry. Co.* (1957) 152 Cal.App.2d 80, 84-85 [312 P.2d 739].)

■ In this case, both plaintiff and defendant testified that they did not consider plaintiff to be in any position of danger or peril whatever merely because he had mounted the tailgate of the truck in order to direct defendant in his backing maneuver. Prior to the jerking of the truck, neither party was aware of the existence of any sort of emergency situation. Plaintiff's position became actually perilous and a true emergency arose only at that precise moment when defendant took his foot from the clutch and thereby caused the truck to jerk; at that point in time, defendant had no

chance at all to avoid the accident, which was then in the process of occurring. Under these circumstances, the trial court was obviously correct in refusing to instruct on the doctrine of last clear chance.

Plaintiff's last contention is that the court erred in instructing the jury on the doctrine of assumption of risk. We agree.

■ It is settled that the doctrine of assumption of risk is a limited defense which applies only when there is evidence that the plaintiff voluntarily chose to take his chances of being harmed by a *particular risk* of which he had actual knowledge. (*Vierra* v. *Fifth Avenue Rental Service* (1963) 60 Cal.2d 266, 270-271 [32 Cal.Rptr. 193, 383 P.2d 777].)

■ Although it is true that a plaintiff may assume the risk of a dangerous condition created by the negligence of others (*Prescott* v. *Ralphs Grocery Co.* (1954) 42 Cal.2d 158, 162 [265 P.2d 904]; *Hidden* v. *Malinoff* (1959) 174 Cal.App.2d 845, 850 [345 P.2d 499]), there is ample authority that a plaintiff cannot be held to have assumed the risk that others *will* act negligently, absent knowledge of a propensity on their part to do so. (*Hidden* v. *Malinoff, supra,* at p. 851; *Johnson* v. *Nicholson* (1958) 159 Cal.App.2d 395, 411 [324 P.2d 307]; *Hedding* v. *Pearson* (1946) 76 Cal.App.2d 481, 486 [173 P.2d 382]; *Muskin* v. *Gerun* (1941) 46 Cal.App.2d 404, 410 [116 P.2d 105].) Thus a person who assumes the risks of dangers ordinarily incident to the use of a particular instrumentality does not assume the risk that another will negligently operate such instrumentality. (*Bee* v. *Tungstar Corp.* (1944) 65 Cal.App.2d 729, 733 [151 P.2d 537].)

The case of *Gornstein* v. *Priver* (1923) 64 Cal.App. 249 [221 P. 396] involved a factual situation very similar to that present in the instant case. In *Gornstein,* plaintiff chose to sit with her legs hanging over the end of a truck driven by one of defendant's employees. The driver of the truck came to an abrupt stop behind a streetcar, and the truck was struck from the rear by another truck in such a manner that plaintiff's feet and legs were caught between the two vehicles. Although defendant contended that plaintiff had absolved him from liability by voluntarily seating herself on the truck in a perilous manner, the court rejected this contention, stating: "If plaintiff was imprudent in seating herself as she did, then, while she may be deemed to have assumed all the risks of danger ordinarily incident to such position of peril, she did not assume the risk of danger created by the negligence of defendant's drivers in their operation of the trucks. . . . Had plaintiff sustained injury solely because of the position in which she had seated herself and without any negligence on the part of defendant's drivers in their operation of the trucks, she probably could not have recovered any damages from defendant. Thus, for example, if, during the usual and ordinary movements of the truck on which she was riding and without any negligence on the part of defendant's drivers in their management of the

machines, plaintiff, solely by reason of the position which she had taken, had been bounced off the truck, she probably would have had no remedy against defendant, for the very good reason that in that case she would have to attribute her injury solely to her own voluntary conduct. That would be one of the risks ordinarily incident to plaintiff's position on the truck. But while assuming risks of that character, plaintiff did not assume the risk of danger created by the negligent misconduct of defendant's drivers; and for injury caused by such misconduct defendant is liable." (Pp. 256-257.)

 While it might be said that plaintiff assumed certain risks when he chose to mount the tailgate of defendant's truck and guide that vehicle backward while holding on with only one hand to a hay hook and using the other hand to signal to defendant, we find none of these risks involved in the accident, with its resultant injuries. The evidence in our case clearly shows that plaintiff did not fall from the truck as a result of its normal backward movement but as a result of defendant's having negligently caused the truck to jerk by releasing the clutch while the motor was still running, and there is no evidence whatever to suggest that plaintiff knew or had any reason to suspect that defendant had any propsensity for engaging in negligent conduct of this nature. Under such circumstances, we are satisfied that plaintiff's injuries were the result of negligent conduct which was not a risk which plaintiff could be held to have assumed. We conclude that it was prejudicial error to instruct the jury on the doctrine of assumption of risk, for the instructions in question no doubt confused and misled the jury. (*Hidden* v. *Malinoff, supra,* at p. 851.)

 Although defendant argues that plaintiff waived his right to complain of the giving of such instructions because his own counsel injected the doctrine of assumption of risk into the case by asking plaintiff whether he considered it dangerous to ride on the back of the truck, we find no merit in the contention. The pleadings show defendant affirmatively raised the defense of assumption of risk in his answer.

The judgment is reversed.

Agee, J., and Taylor, J., concurred.

A petition for a rehearing was denied November 20, 1969, and respondent's petition for a hearing by the Supreme Court was denied December 17, 1969. Sullivan, J., was of the opinion that the petition should be granted.