[Civ. No. 1552. Fifth Dist. Apr. 24, 1973.]

DAN SMITH, Plaintiff and Appellant, v.
DHY-DYNAMIC CO., Defendant and Respondent;
AETNA CASUALTY & SURETY COMPANY, Intervener and Appellant.

## COUNSEL

Sandell, Hill & Young, Chalmers E. Lones and Harold D. Sandell for Plaintiff and Appellant.

Creede, Dawson & Gillaspy and Stanley H. Tibbs for Intervener and Appellant.

McCormick, Barstow, Sheppard, Coyle & Best, Hollis G. Best and William Boone for Defendant and Respondent.

## OPINION

**GARGANO, J.**—This action was brought by plaintiff, Dan Smith, against defendant Dhy-Dynamic Co., a corporation, to recover damages for the personal injuries plaintiff sustained while working in the course and scope of his employment with Peter Kiewit Sons' Co. Thereafter, the Aetna Casualty & Surety Company, the workmen's compensation carrier for

plaintiff's employer, intervened to recover workmen's compensation benefits and medical expenses paid to plaintiff as the result of the injury. Plaintiff and intervener appeal from the judgment entered on jury verdicts in favor of defendant.

Plaintiff was seriously injured on June 24, 1966, when a machine, known as a Dynahoe, fell into the ditch in which he was working; the ditch, a drain inlet for the California Aqueduct, was about 150 feet long and about 7 feet or 8 feet deep; a concrete pipe 48 inches in diameter had been laid in the inlet; the machine, a combination front-end loader and backhoe, was manufactured by defendant and had been sold to plaintiff's employer.

At the time of the accident the drain inlet was being back-filled, and plaintiff and a fellow-employee, J. C. Adams, were working on the north side of the concrete pipe; Adams was operating a tamper called a wacker and plaintiff was pulling the rope which was attached to it. The Dynahoe approached from the south to drop dirt on the south side of the concrete pipe and plunged down the slope and into the drain inlet. Adams saw the machine in the air and ran; however, Smith, who was about three feet or less from Adams, was pinned against the ditch bank. The right hand corner of the bucket on the Dynahoe caught the wacker and the wacker caught plaintiff's right leg; the leg was later amputated above the knee.

### Plaintiff's Appeal

At the close of the trial plaintiff elected to submit the case to the jury solely on the theory of strict liability for injuries caused by a defective product; the complaint stated a cause of action for negligence, but the plaintiff stipulated that the jury instructions be limited to "products liability." Plaintiff complains because the court gave an instruction on the affirmative defense of assumption of risk. The instruction read in pertinent part as follows: "If plaintiff assumed the risk [of harm] from the Dynahoe going into the ditch, he may not recover damages for an injury resulting therefrom."

■ The manufacturer of a defective product is strictly liable in tort for injuries caused by the defect. (*Greenman* v. *Yuba Power Products, Inc.*, 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049]; *Vandermark* v. *Ford Motor Co.*, 61 Cal.2d 256 [37 Cal.Rptr. 896, 391 P.2d 168].) Ordinarily, contributory negligence, such as a negligent failure to discover the danger or defect or to take precautions against the possibility

of its existence, is not a defense. (*Barth* v. *B. F. Goodrich Tire Co.,* 265 Cal.App.2d 228 [71 Cal.Rptr. 306]; Rest.2d Torts, § 402a.)

■ The defense of assumption of risk, unlike contributory negligence, rests upon plaintiff's consent to relieve the defendant of an obligation of conduct toward him and to take his chances of harm from a particular risk. (Prosser on Torts (3d ed. 1964) p. 450.) Because a person may not voluntarily expose himself to a known danger without accepting the consequences, the affirmative defense of assumption of risk is applicable to a claim for damages resulting from injuries caused by a defective product. (*Luque* v. *McLean,* 8 Cal.3d 136, 145 [104 Cal.Rptr. 443, 501 P.2d 1163].)

■ Before the jury may be instructed on assumption of risk, there must be evidence to show that the injury was caused by a danger known to plaintiff and that the plaintiff voluntarily chose to enter or to remain in the zone of danger; actual, not constructive, knowledge of the danger is required; there must be proof that the plaintiff had knowledge of the particular risk, appreciated the magnitude of it, and voluntarily assumed it. (*Vierra* v. *Fifth Avenue Rental Service,* 60 Cal.2d 266 [32 Cal.Rptr. 193, 383 P.2d 777]; *Keeton* v. *Henning,* 1 Cal.App.3d 50 [81 Cal.Rptr. 424]; *Gault* v. *May,* 275 Cal.App.2d 321 [79 Cal.Rptr. 858].)

■ As the court carefully explained in *Gault* v. *May, supra,* 275 Cal. App.2d 321, 327: " 'To justify application of the doctrine of assumption of risk there must be evidence to show that the victim had knowledge and appreciation of the specific danger involved. [Citing cases.] There must be a voluntary acceptance of the specific risk involved and such acceptance, whether expressed or implied, must have been with knowledge and appreciation of the risk. . . . Under ordinary circumstances the plaintiff will not be taken to assume any risk of either activities or conditions of which he is ignorant. Furthermore, he must not only know of the facts which create the danger, but he must comprehend and appreciate the danger itself. . . . *His failure to exercise ordinary care to discover the danger is not properly a matter of assumption of risk, but the defense of contributory negligence.*' " (Italics added.)

■ In an action based on strict liability in tort for injuries caused by a defective product, it is not incumbent upon the plaintiff to prove that he was not aware of the danger or dangerous defect; rather, it is incumbent upon the defendant to prove that plaintiff knew he was stepping into a place of danger and that he had actual knowledge of the specific danger involved. (*Luque* v. *McLean, supra,* 8 Cal.3d 136; *Carr* v. *Pacific Tel. Co.,* 26 Cal.App.3d 537, 542 [103 Cal.Rptr. 120].)

■    It is error to give an instruction on assumption of risk unless the evidence establishes all of the doctrine's necessary elements; the instruction tends to confuse the jury by injecting into the case matters which the undisputed evidence shows are not involved. (*Harris* v. *Chisamore,* 5 Cal. App.3d 494 [85 Cal.Rptr. 223].)

■    Respondent does not challenge any of the principles we have summarized. It argues that the evidence in this case leads to the irrefragable conclusion that the accident was caused by the negligence of Ace Park, the operator of the Dynahoe, or the negligence of plaintiff's employer or by a combination of both. It also argues that the plaintiff, by working in the ditch within proximity of the machine, was in a known zone of danger and assumed the risk of injury; relying on *Tavernier* v. *Maes,* 242 Cal. App.2d 532, 544 [51 Cal.Rptr. 575],[1] respondent insists that it was not error for the court to give the instruction on assumption of risk because the instruction is justified if the proof shows that the "accident and the resultant injury fall within general hazards as so defined of which the victim had knowledge."

Respondent has pointed ably to numerous excerpts in the record which support respondent's position that the accident in this case was caused by the negligence of Ace Park. However, despite respondent's protestations to the contrary, there was also substantial evidence to prove that the brake system of the Dynahoe was defective and that this defect was a proximate cause of plaintiff's injury.

The Dynahoe had brakes on the rear axle only. There was evidence that because of the tremendous weight on the front end the machine, when loaded and used on rough terrain, had a tendency to bounce and lift and that this tendency reduced considerably the effectiveness of the rear brakes; the vehicle was equipped with a larger front-end bucket than any similar machine, and the tires on the rear wheels were bigger and more resilient than the front tires. There was also evidence that brakes could have been installed on the front wheels and could have been operated by a separate pedal.

Ace Park testified that he was operating the Dynahoe at the time of the accident. He said that he first applied the brakes when the vehicle was about 10 feet from the front of the ditch and that he pushed them down as far as he could but "the machine just kept on crawling and went right over." Park added that the vehicle was always tilting, and with every

---

[1]The *Tavernier* case, *supra,* has been severely criticized in *Curran* v. *Green Hills Country Club,* 24 Cal.App.3d 501 [101 Cal.Rptr. 158].

bump hit it either tipped forward or backward to one side or the other. He stated that it tilted forward as it went into the drain inlet.

Steve Bluett, an expert witness, expressed the opinion that the Dynahoe continued to crawl after Park stepped on the brakes because at the time of the momentary stop the machine rocked forward on the front wheels, shifting the weight off of the rear and reducing the braking power in the back area. Bluett said that brakes on the front wheels would have made a difference because "as the weight went to the front wheels, if there had been brakes there then the piece of equipment would have been braked or retarded by the front wheels." The witness estimated that it would have cost about $200 to put brakes on the front wheels of the machine.

The case of *Pike* v. *Frank G. Hough Co.,* 2 Cal.3d 465, 470 [85 Cal. Rptr. 629, 467 P.2d 229], is authoritative. In that case the decedent, Robert Pike, was killed when he was struck by a Hough Model D-500 Paydozer, which was being used in the construction of the Oroville Dam; he was some 30 to 40 feet behind the vehicle, standing on an angle, when it backed up and struck him. The mechanical engineer testified that the design of the Paydozer with its large engine box to the rear created a blind area of such dimensions that if the operator looked behind him while sitting in the cab he could not see a man six feet tall standing anywhere between one and forty-eight feet to the rear of the machine. The expert expressed the opinion that the blind area could have been reduced to a large extent by the installation of two rearview mirrors located four feet out from each side of the cab; he recommended a blinking amber light or a tooting horn to alert persons within the remaining blind area. In reversing the judgment based on a nonsuit, the Supreme Court had this to say: "The duty of a manufacturer with respect to the design of products placed on the market is defined in the Restatement Second of Torts, section 398: 'A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design.' Thus, the manufacturer must use reasonable care ' "to so design his product as to make it not accident-proof, but safe for the use for which it was [*sic*] intended." ' [Citation.] What is 'reasonable care,' of course varies with the facts of each case, but it involves a balancing of the likelihood of harm to be expected from a machine with a given design and the gravity of harm if it happens against the burden of the precaution which would be effective to avoid the harm."

We agree with respondent's statement that plaintiff was working in a

zone of danger at the time of his injury; there was evidence that the Dynahoe came close to the edge of the drainage inlet as it disposed of its load of dirt, that before the accident occurred loads of dirt were being dumped every two or three minutes into the ditch near where plaintiff and Adams were working, and that plaintiff and the other workmen were told not to work in front of the Dynahoe or in any area of danger from it. What we do not agree with is the suggestion that because plaintiff was in a zone of danger, he assumed categorically the risk of injury from every conceivable hazard which could have caused his injury no matter how unforeseeable the hazard might have been. For example, the evidence we have related shows that plaintiff knew, or must have known, that he was in danger of being hit with dirt, rock or debris and that he assumed the risk of injury from that danger. But, how can it be said that plaintiff knew, or must have known, that there was a danger that the machine, itself, might fall into the ditch either because of the negligence of the driver or the negligence of plaintiff's employer as respondent asserts; Ace Park was an experienced driver, and for a period of about 12 months prior to the accident the Dynahoe had been used on the project for backfilling purposes without ever falling into the ditch. ■ As the court said in *Keeton* v. *Henning,* *supra,* 1 Cal.App.3d 50, 56: "Although it is true that a plaintiff may assume the risk of a dangerous condition created by the negligence of others . . . , there is ample authority that a plaintiff cannot be held to have assumed the risk that others *will* act negligently, absent knowledge of a propensity on their part to do so. . . . Thus a person who assumes the risks of dangers ordinarily incident to the use of a particular instrumentality does not assume the risk that another will negligently operate such instrumentality. [Citation.]"

■ This is a products liability case, and even were we to assume that the plaintiff must have known that there was a possibility that the Dynahoe might fall into the ditch because of the negligence of the driver or from some other cause unrelated to its brake system, this assmption would not compel us to hold that plaintiff necessarily assumed the risk of injury from the falling vehicle if the cause of the falling was a mechanical defect in the vehicle. As we have stated, a person who enters the zone of a known danger does not assume the risk of injury from unknown hazards which increase, substantially, the probability of injury. While the defense of assumption of risk is available to the defendant in an action to recover for an injury caused by a defective product, the only inquiry relevant to that defense is whether the plaintiff assumed the risk of injury from the

defect which made the product unreasonably dangerous for the use intended.[2]

The real issue before the jury in this case was one of causation, not whether plaintiff assumed the risk of injury. The trial judge instructed the jury on proximate cause, and if the jury had found that the accident was caused by the negligence of Ace Park or by the negligence of plaintiff's employer or by a combination of both, the jury would have had to return a verdict in favor of respondent under that instruction. On the other hand, if the jurors believed that a defect in the Dynahoe's brake system was a proximate cause of plaintiff's injury and then denied recovery because they also believed that he assumed the risk of injury from that danger, their verdict was erroneous. There was no evidence to prove that plaintiff, an uneducated laborer, was familiar with the brake system of a Dynahoe; he had been on the job only four months and prior to that time had worked as a hod carrier for about 18 years.[3] We repeat what was said succinctly in *Carr* v. *Pacific Tel. Co., supra,* 26 Cal.App.3d 537, 542: ". . . before a jury may be instructed on the doctrine [of assumption of risk], there must be evidence not only that the plaintiff knew he was stepping into a place of danger but that he also had actual knowledge of the *specific danger* involved."

Because there is a probability of another trial, we consider plaintiff's second contention that the court erred in refusing to instruct the jury on Vehicle Code section 26311; this section provides, with some exceptions not pertinent to this opinion, that every motor vehicle be equipped with service brakes on all wheels. Plaintiff asserts that section 1504(30) and section 1591(c)(1) of title 8 of the California Administrative Code adopt the brake requirements of the Vehicle Code by reference and make those requirements applicable to haulage vehicles even though the haulage vehicles are manufactured for construction work and are used primarily on construction sites.

Section 1504(30) provides: "Haulage vehicle, as used in these Orders. A self-propelled vehicle including its trailer, used to transport materials on

---

[2]For example, a workman who has confidence in the skill of a heavy equipment operator might be willing to work in a zone of danger if he believed that the only hazard is risk of injury from the negligence of the driver. It would be absurd to hold that under such circumstances the workman also assumes the risk of injury from unknown defects in the equipment, increasing immensely the degree of danger.

[3]It is significant that Adams who, like plaintiff, had been told not to work in front of the machine, or in any area of danger from it, and who defendant states heard the machine coming before the accident occurred, was also in the zone of danger and barely escaped injury.

construction projects. The term 'haulage vehicle' includes trucks, truck and trailer combinations, and all other similar equipment used for haulage."

Section 1591(c)(1) provides: "All haulage vehicles shall be equipped with brakes (see 1591(d) for special scraper requirements) or equivalent, that are adequate to stop and hold the vehicle stationary on any grade which the vehicle can climb under its own power within the limit of traction of the braked wheels. Such braking devices shall be in compliance with the current applicable California Vehicle Code and shall be maintained in good condition. The use of a counter-torque device is recommended on haulage vehicles operating on grades."

While authority can be found for the proposition that noncompliance with a standard set out in a statute or industrial safety order furnishes probative evidence of defective design (*Balido* v. *Improved Machinery, Inc.*, 29 Cal.App.3d 633, 641 [105 Cal.Rptr. 890]), the court properly refused to instruct the jury on Vehicle Code section 26311. The brake requirements for motor vehicles as set forth in the Vehicle Code are directed to the operation of vehicles on the public highways and were enacted to protect the traveling public. Title 8 of the California Administrative Code is concerned with an entirely different subject, industrial safety, and its purpose is to safeguard workmen in designated industries. The brake requirement for haulage vehicles designed primarily for construction use is prescribed by the first sentence of section 1591(c)(1), i.e., that all such vehicles "shall be equipped with brakes . . . or equivalent, that are adequate to stop and hold the vehicle stationary on any grade which the vehicle can climb under its own power within the limit of traction of the braked wheels," not by section 26311 or any other section of the Vehicle Code.

If the second sentence of section 1591(c)(1) adopts the brake requirements of the Vehicle Code for construction vehicles used primarily in construction work, as plaintiff maintains, the first sentence of that section is redundant; under the Vehicle Code the service brakes of every motor vehicle must be adequate to stop and hold the vehicle on any grade on which it is operated. (§ 26454.) Furthermore, if the construction contested for by plaintiff were adopted, it could lead to harsh and preposterous results. The Vehicle Code itself makes the provisions of section 26311 inapplicable to a vehicle which is only incidentally operated or moved over a highway. (§ 25802; *Davis* v. *Pine Mountain Lbr. Co.*, 273 Cal.App.2d 218, 222 [77 Cal.Rptr. 825].) Yet, by judicial fiat, we would be requiring four-wheel brakes on all haulage vehicles even though the contemplated

use of the vehicles made such brakes totally unnecessary. More important, if section 1591(c)(1) adopts Vehicle Code section 26311, by necessity all of the other brake requirements of the Vehicle Code would be applicable to all haulage vehicles whether seldom or ever driven on public highways, no matter how unnecessary or impractical the requirement might be for the safety of construction workers; a stop lamp which is actuated on application of the brakes is a good example. (See Veh. Code, § 24603, subd. (f).) It is the rule that in interpreting a statute (or a safety order) effect must be given to all of the language used (*County of Los Angeles* v. *Graves,* 210 Cal. 21 [290 P. 444]); also, it is basic that laws must be construed so that unjust and foolish results may be avoided. (*Phillips* v. *Municipal Court,* 24 Cal.App.2d 453 [75 P.2d 548].)

When section 1591(c)(1) is viewed in light of its objectives and purposes and given a common sense interpretation, it is clear that the brake standard for haulage vehicles used primarily in construction work is the one enunciated by the safety order itself, not the standard articulated by the Vehicle Code, and that the second sentence merely means that compliance with the industrial safety order does not excuse compliance with any Vehicle Code requirement which may be applicable when the haulage vehicle is driven on a public highway.

### Intervener's Appeal

Intervener complains because the court instructed the jury on contributory negligence. The contributory negligence instruction was carefully limited to plaintiff's employer and was proper under the pleadings. Unlike plaintiff's complaint, intervener's complaint was based on negligence only, and the defense of contributory negligence on the part of plaintiff's employer was made an issue by respondent's answer.

Intervener also suggests that the trial judge erred when he denied intervener's motions to amend its complaint so that it could proceed on the basis of products liability only. We do not reach this question. We reverse the judgment and grant a new trial on all issues. In this case the jury's verdict against plaintiff precluded a verdict in favor of intervener, no matter what the jury may have decided as to the claim of intervener.[4]

---

[4]The court told the jurors that if they determined that plaintiff was entitled to a judgment against respondent, they were to answer the following questions:
"Question One: Was Peter Kiewit & Son Co. negligent?
If you have answered Question One in the affirmative:
Question Two: Did that negligence concur with the negligence of the defendant as a [proximate] cause of the injuries and damages suffered by the plaintiff?
[If you have answered Questions One and Two in the affirmative:
Question Three: What is the amount of workmen's compensation benefits that has

■ Even though we are mindful of the rule, upon which respondent relies, that a party "cannot predicate a right to a reversal upon an erroneous instruction relating to another issue the determination of which was not essential to the verdict reached" (*Baxter* v. *Rogers,* 191 Cal.App.2d 358, 365-366 [12 Cal.Rptr. 635]), we must reverse the judgment. If the assumption of risk instruction had not been given, and if the jury had returned a verdict against the plaintiff without such an instruction, it would be certain that the jury determined that the brake system of the Dynahoe was not defective and had not caused the accident. Under those circumstances, we would not reverse the judgment against intervener even if we agreed with intervener's suggestion that the court should have allowed it to proceed on the basis of strict liability only.[5] The assumption of risk instruction was given, however, and we have no way of knowing what the jury determined. It is for this reason that we have held that the erroneous instruction was prejudicial to the plaintiff. The instruction was also prejudicial to intervener; as we have indicated, intervener's right of recovery was contingent upon the successful culmination of plaintiff's lawsuit.

The judgment is reversed and a new trial is ordered on all issues.

Brown (G. A.), P. J., and Franson, J., concurred.

---

been paid to or for the plaintiff for his injuries in this accident?]"
Because the jury returned a verdict against the plaintiff, the questions were not answered.

[5] On retrial, the intervener should be given the opportunity to amend prior to retrial if a timely motion is made.